HOBE BUTTON CO. *v.* UNITED STATES (No. 2376).[1]

CONSTRUCTION, SECTION 304 (*a*), TARIFF ACT OF 1922—MARKING—ARTICLE—
PACKAGE—PENALTY—BUTTONS.

Section 304 (*a*), tariff act of 1922, provides that an imported *article* shall, when practicable, be marked so as to indicate the country of its origin, and that the *package* containing it shall also be so marked. An additional duty is levied for not marking the *article*, but none is levied for not marking the *package*. It is not the meaning of this section that, where it is not practicable to mark the *article*, the additional duty shall be levied for failing to mark the *package*. Buttons were imported fastened to cards, the cards in boxes, and the boxes in packing cases. Only the packing cases were marked to indicate the country of origin. The *article* was the *button* and not the *card of buttons*, and the judgment of the Board of United States General Appraisers overruling a protest against the action of the collector in assessing additional duty for failure to mark the *card* is reversed.

United States Court of Customs Appeals, November 4, 1924

APPEAL from Board of United States General Appraisers, Abstract 46836

[Reversed.]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* of counsel) for appellant.
*William W. Hoppin,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.

[Oral argument October 20, 1924, by Mr. Halstead and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain large buttons were imported from Germany by appellant. Twelve buttons were fastened to a card, which according to the importer's contention was done to avoid counting the buttons. Before the buttons were sold in this country by the importer they were removed from the cards to which they were attached at the time of importation and placed on other cards upon which was the name of the importer. The importer admits that the removal of the buttons from one card to another was done in part to prevent the American purchaser from knowing that the buttons came from

---

[1] T. D., 40488.

Germany. · The cards of buttons were contained in small boxes, and the small boxes were placed in packing cases. The packing cases were marked at the time of importation indicating the country of origin. The buttons, the cards upon which they were sewed, and the inside cartons were not marked at the time of importation.

Under section 304 (a) of the tariff act of September 21, 1922, the collector required the importer to mark each card, and while the record does not clearly disclose this fact, it was admitted in argument that he also required the marking of the inside carton before permitting delivery of the goods. He did not require the marking of the buttons.

Upon the appraiser's report that the merchandise was not legally marked according to requirements of the section and that the marking did not constitute a change of practice, additional duty was assessed at 10 per cent of the appraised value.

The importer protested and before the board the Government's counsel made the following admission:

We claim there is a vast difference between the package and the article. In the first place we claim that this box is not the package that is the part of the article. The buttons on the card is the article. The package is a large case containing so many of those boxes there, dozens or gross, etc.

The importer's position is found in the record on pages 5 and 6, as follows:

Mr. WILSON. The marking upon the card and the package was done in the appraiser's warehouse. No penalty accrues by failure to mark a package—the law says—paragraph 304 (a) states that if the container is not marked it shall not be delivered until it is marked. We are concerned with the article, and the article is a horn button, and not a box. It says every package containing an imported article shall be marked, and stamped, etc.

General Appraiser WAITE. The way that the law stands requires the marking of the article and the package both.

Mr. WILSON. Exactly, when the article is capable of being marked without injury, in a conspicuous place, that it shall not be obscured by any subsequent attachment or arrangement.

The importer presented a witness who, after testifying to the manner of packing the goods and other facts detailed above, was asked: "Q. Can it be marked without being broken?" Here the Government and the importer stated their respective positions as above indicated.

While the offers to prove of the importer would not be very satisfactory if the action of the board refusing same were relied upon for reversal of this case, they tend to show that the importer was not permitted to prove, or attempt to prove, that the buttons could or could not have been marked. According to the board's and the Government's positions the markability of the buttons was immaterial since the buttons were not the article of importation referred to in section 304 (a).

Section 304 (a) reads as follows:

Sec. 304 (a). That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, **or labeled** in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments· or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury· may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regulations to carry out the foregoing provisions.

It will be noted that the first part of the section provides that every article imported which is capable of being marked without injury at the time of its manufacture or production, shall be marked, stamped, branded, or labeled in a conspicuous place so as to indicate the country of origin; that the marking shall be as nearly indelible and permanent as the nature of the article will permit; and that such articles shall be held in customs custody until so marked, etc. It also provides ''any such articles held in customs custody shall not be delivered until every such article of the importation which shall have been released from customs custody not so marked shall be marked.'' The first part of the paragraph also provides that unless the *article*, not so marked, is exported, there shall be imposed, in addition to the regular duty, a duty of 10 per cent of the appraised value.

The second part of the paragraph provides for the marking of every package containing an imported article; and also provides that the package shall be held in customs custody until so marked, and until packages of the importation already released shall have been marked, the remaining packages in customs custody shall not be delivered.

It will be noted that the first part of the paragraph requires the levying of the additional duty of 10 per cent where the article is not

marked, while the second part of the paragraph makes no provisions for additional duty in the event that the package is not marked. If we understand the Government's contention, it is that the outside container and the inside container of the importation are packages and under the second part of the law are required to be marked; that the article is the card of 12 buttons and that they were not marked except in customs custody, and were not marked in their imported condition; and that the collector properly assessed 10 per cent duty upon them.

The importer contends that the buttons are the articles; that the packages were the boxes in which they were placed and that there is no penalty for failing to mark packages; that they were marked under customs custody and that the collector's release of the buttons was equivalent to a finding that the buttons were not markable, and since they were not required to be marked in customs custody that the penalty of 10 per cent would not attach to them.

Clearly Congress intended that where it was practicable to do so they would require that all imported articles be marked in such a way that the purchasers of the articles in this country would know the country of origin. No doubt one of the reasons which prompted the legislative body to make this provision was to stimulate pride in a home production.

It is clearly evident from the testimony that the importer prefers not to have on his imported articles the marking indicating the country of origin, no doubt for the reason that it affects its salability.

Under these circumstances it would seem to be the duty of this court, in construing this paragraph, to indulge every reasonable presumption and apply every reasonable rule of construction toward the end that the evident intention of Congress may be carried out

We are, therefore, called upon to determine in this particular case which is the *article* and which are the *packages*. Congress has not been as definite and specific in the provisions of the paragraph as it could have been, and for the purposes for which the paragraph was written we do not think it was very carefully constructed. We recognize that probably no language could have been used which, when tested by the usual rules of construction, would have been equitable and practicable under all circumstances. This court is not unmindful of the fact that it, in this case, can put no construction upon the words and the paragraph that will solve all the problems of the customs administration officers or the importers, which may arise under this paragraph in the future.

In this instance the article of importation was buttons and not cards of buttons, nor boxes of buttons.—Bradford Co. et al. *v.* American Lithographic Company (12 Ct. Cust. Appls. 318; T. D. 40318). The dutiable paragraph of the act of 1922 is for buttons not

specifically provided for 45 per cent ad valorem. It is clear to us that Congress intended, in this instance, the *article* to be the button, and under section 304 (a) they intended that the button should be marked, stamped, branded, or labeled, if it was capable of being so marked without injury at the time of its manufacture or production. They also intended that the marking should be as nearly indelible and permanent as the nature of the button would permit. The statute does not say that the article should be indelibly or permanently marked, stamped, branded, or labeled, but that it should be as nearly indelible and permanent as the nature of the article would permit. There are instances of importations no doubt where it is not possible to indelibly or permanently mark the articles, but this does not relieve the importer from seeing that his importation is marked, stamped, branded, or labeled in "as nearly indelible and permanent manner as the nature of the article will permit at the time of its manufacture or production." No doubt many articles of importation would not permit of a marking more indelible or permanent than a paper labeling, and many articles will permit of no marking, branding, stamping, or labeling whatever without injury. Congress intended in the latter instance that such marking, stamping, branding, or labeling be not required.

In the case at hand, under the theory of the Government, it is not material as to whether the button could be marked or not, and the board took the same view of the case. We think this position was erroneous.

In the case of Bradford Co. et al. *v.* American Lithographic Co. (12 Ct. Cust. Appls. 318; T. D. 40318), the importation was cigar labels and bands. The bands and labels covered by the invoice were packed in bundles of 100. Each bundle was inclosed in a paper band having the words "made in Germany" stamped thereon. Individual labels were not marked. The appraiser's report stated that the marking of the bundles was considered a legal marking by his office. The American Lithographic Co. (American producer) protested, claiming that the individual cigar bands were capable of being marked and fell within section 304 (a) of the act of 1922. The board sustained the protest. The importer appealed to this court and the Government who interpleaded, took the position of the American producer (appellee), that the cigar band was the article and that the bundle of 100 cigar bands was not the article. It will be observed that their contention there is the opposite of their contentions in the case at bar. In that case there was no doubt but what the individual cigar label could have been marked. In this case there seems to be some doubt and the Government contends that the button is not the article.

The position of the Government in this and the Bradford case indicates that they desire a construction which, if carried to its

logical conclusion, would result in a holding that articles which can not be marked will not be regarded as the article covered by the additional duty provision of section 304 (a), but that if the article can be marked then it should be held to be the article of importation therein referred to. Obviously the paragraph does not say this, nor can it be made to say it by any reasonable construction.

Congress intended that the article, if markable, and if not marked when imported, should bear the additional 10 per cent duty, and it intended that every package containing any imported articles should be marked. It did not, however, provide any additional duty for the failure to mark the package. While there may be the same necessity for marking packages as there is for marking the article, Congress in its wisdom did not similarly treat them.

The finding of the board to the effect that the card of buttons was the article and should have been marked as such, and that the importer's failure to mark it, justified the additional duty was erroneous.

In the board's opinion it is stated, "Writing paper appears to be quite analogous to the merchandise at bar; not necessary to mark single sheets but only to mark the immediate covering * * * A mark on the cards to which the buttons were attached would have been as good as any." While we are not deciding the writing paper question, we think this statement is subject to considerable question. We believe that whether the article is markable is a question of fact to be decided upon the evidence and pertinent circumstances in each individual case; also the questions as to which is the article of importation and which is the package must be determined in the same manner.

To hold that the cards of buttons were the articles referred to in the first part of the paragraph might lead to the holding that cards of garters, sleeve holders, fountain pens, pencils, and similar articles were for the same reason *articles*. It is not necessary or proper for us to pass upon these various articles, nor do we do so. Their status should be determined in the manner indicated hereinbefore. Mention is made of them here solely for the purpose of directing attention to the fact that cards of articles when all the facts are considered may not be the article of importation.

If it is urged that the word *article* is synonymous with commercial unit and that the commercial unit is the card of buttons, it would seem to be sufficient to say that there is no proof in the record that the card of buttons was the commercial unit. Furthermore, we are not inclined to adopt the commercial unit test, since to do so would, in our judgment, tend to encourage and promote a rearrangement of commercial units by importers for the purpose of avoiding marking which was evidently not intended or desired by Congress.

The judgment of the Board of General Appraisers is *reversed*.