P. LORILLARD & CO., INC. *v.* UNITED STATES (No. 3963)[1]

[1] T. D. 48412.

United States Court of Customs and Patent Appeals, June 17, 1936

*Bigham, Englar, Jones & Houston* (*T. Catesby Jones, John M. Aherne,* and *Edward Paul Greene* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument April 8, 1936, by Mr. Aherne and Mr. FitzGibbon]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

P. Lorillard & Co., Inc., the appellant, imported at the port of New York 5237 bales of so-called Turkish cigarette tobacco, and the collector found that the packages were not sufficiently marked to indicate the country of origin as required by section 304, Tariff Act of 1930, under which act the importation was made, assessed an additional 10 per centum duty upon the same on account of the alleged failure properly so to mark, and required the importer to place the term "Greece" on each package before delivery was made.

The packages all contained several markings, in large, bold type, some of which differed in the numbers representing grades, dates and other minor matters. Photographs of some of the marked bales were introduced at the trial and the following words, letters and figures, shown by the photographs, are illustrative of all the marks on the merchandise:

SAMOS

1930

MPL

137

7191

NEW-YORK

The pertinent provisions of section 304, Tariff Act of 1930, follow:

SEC. 304. MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner *as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe.* Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. The Secretary of the Treasury may, by regulations prescribed hereunder, except any article from the requirement of marking, stamping, branding, or labeling if he is satisfied that such article is incapable of being marked, stamped, branded, or labeled or can not be

marked, stamped, branded, or labeled without injury, or except at an expense economically prohibitive of the importation, or that the marking, stamping, branding, or labeling of the immediate container of such article will reasonably indicate the country of origin of such article. [Italics ours.]

The importer protested the collector's exaction of the additional duty of 10 per centum. At the trial before the United States Customs Court, Third Division, the importer introduced the testimony of a number of witnesses, most of whom were familiar with the foreign purchase, and importation into this country, of so-called Turkish tobacco and with its manufacture into cigarettes in the United States.

Appellant's contention in the trial court and here is that this particular kind of tobacco had no use except in the manufacture of cigarettes of the so-called Turkish variety, and that the tobacco involved in the instant importation did not and could not reach the ultimate consumer (the smoker) in the form imported; that after it was released from customs custody and while in its imported condition no one saw it except people connected with four large manufacturers of cigarettes, and less than a dozen wholesale tobacco dealers; that in the trade concerned with this particular kind of tobacco the term "Samos" indicated that the tobacco originated in the country of Greece, and that having proved these facts, it was entitled to a holding by the trial court that the marking was sufficient. Appellant points out that this court, in certain decisions, held that the purpose of the marking statute was to require that purchasers or consumers of imported goods be informed as to the country of the origin of such goods and argues that it is not necessary that the marking should be such as would indicate the country of origin to anyone except such purchasers or consumers. It is conceded in this case that the tobacco itself was incapable of being marked.

The trial court held, in substance, that appellant's testimony did not show that the marking complied with the statute and stated that:

We find, however, that section 304 of the act of 1930 requires something more than that the members of a particular industry shall be apprised of the country of origin of imported merchandise. There is no limitation in this respect in section 304, the statutory requirement being general in terms and requiring that at the time of importation the marking on goods shall clearly indicate the country of origin to anyone capable of reading the English language. [Italics ours.]

Importer has appealed here from the judgment of the trial court and assigns many errors, some of which require no discussion, and others of which will be hereinafter more particularly referred to.

As a basis for appellant's contention that the requirement of the statute has been complied with where there is such a marking as will indicate the country of origin to those familiar with the particular trade or industry in the particular merchandise imported, it cites a number of cases by this court in which we expressed certain views as

to the object Congress sought to accomplish by the enactment of the marking statute.

In *Hobe Button Co.* v. *United States*, 12 Ct. Cust. Appls. 341, T. D. 40488, involving buttons mounted on cards, we stated that Congress intended that where it was practicable to do so all imported articles should be marked in such a way that the "purchasers" of the articles in this country would know the country of origin. The same thought was expressed in *Kraft Phenix Cheese Corp.* v. *United States*, 22 C. C. P. A. (Customs) 111, T. D. 47103. In the same connection, in *Givaudan Delawanna, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 115, T. D. 47104, we referred to the "purchasers" and "consumers" of the imported article. In *United States* v. *American Sponge & Chamois Co.*, 16 Ct. Cust. Appls. 61, T. D. 42731, it was stated that one of the purposes of the marking provision was to protect the "American manufacturer and purchaser of the merchandise." Appellant cites that portion of the majority report of the Ways and Means Committee on the Tariff Act of 1930 which related to said section 304 and in which the following statement was made: "in order more effectively to carry out the purpose of the section to apprise the consumer of the foreign origin of the article." This report was considered in the *Kraft Phenix Cheese Corp.* case, *supra.*

Both sides to this controversy have called attention to various rulings of the Treasury Department as to what constituted sufficient marking under section 304, Tariff Act of 1922, which, in all respects material here, is identical with the section now under consideration. Appellant calls attention to the fact that five days after the instant importation arrived, the Treasury Department adopted a regulation, article 509, Customs Regulations of 1931, under its supposed authority granted by the section in controversy, which stated:

However, colonies, possessions or protectorates outside the boundaries of a mother country shall be considered separate countries.

While it is not contended that this regulation was in effect on the date of importation, it is argued that if the Treasury Department, five days after the instant importation, regarded the name of a possession of a country, when marked upon imported merchandise, as sufficient to indicate the country of origin, it should also have regarded "Samos" as indicating Greece on the date of the importation of the goods here involved, and that the collector should have so held. On this phase of the case, it is sufficient to say that regardless of whether section 304 authorized the Secretary of the Treasury to determine when imported goods are sufficiently marked in the respects with which we are here concerned as to comply with the statute, it is not contended by anyone that there was any regulation in effect on the date of importation which stated that placing such a mark as "Samos" on imported merchandise sufficiently indicated the country of its

origin, or that the Treasury Department had authority to make a binding construction of the law as to what does or does not indicate the country of origin of imported merchandise. As we understand it, the said Treasury regulations are only referred to by the parties hereto for the purpose of illustrating what had heretofore been regarded by the Treasury Department as a sufficient marking.

Appellant showed by several well-qualified witnesses that in this country in the tobacco trade, dealing in the particular kind of tobacco here involved, there was "a general knowledge or understanding with respect to Samos tobacco" and the country in which it was produced and that "Samos" on a package of tobacco indicated to this trade that it was Samos tobacco and a product of Greece. It was also shown that the imported tobacco was known as Turkish tobacco and that so-called Turkish tobacco was grown in Greece, Turkey, and Bulgaria, and that Samos is an island near the Asia Minor coast. One of appellant's witnesses, in effect, also testified that while the term "Samos" marked on imported tobacco would indicate that its origin was Greece, he was of the opinion that the same origin would be indicated if the package contained cotton, although he did not know that any cotton was grown there. The same witness testified that the terms "Xanthi", "Cavalla" and "Catterini", being Grecian towns, would also indicate Greece to him, and that the term "Axar", being a place in Turkey, would indicate Turkey as the country of origin. This witness and others of appellant's witnesses, being buyers of this kind of tobacco, showed great familiarity with foreign countries producing so-called Turkish tobacco.

The Encyclopaedia Britannica, 14th edition, volume 19, at page 922, contains the following information with reference to Samos:

> SAMOS, an island in the Aegean sea, separated from the mainland of Asia Minor by a strait of only about a mile in width; about 27 m. in length, by 14 in greatest breadth; * * * Samos was annexed to Greece in 1912. * * * The island is remarkably fertile, and a great portion of it is covered with vineyards. Oil, raisins, silk, cotton and tobacco are also grown, and barges and sailing vessels are built at Tigani, almost wholly from native timber. Cigarette making employs many women and girls, the tobacco coming chiefly from Thrace. * * *

We cannot agree with the contention of appellant that, in this kind of case, controlling effect must be given to testimony of trade witnesses who testify to the effect that a certain term indicates the country of origin to them and that this knowledge is general and uniform in that particular trade. Appellant was not permitted to prove that the article itself—tobacco—as distinguished from the container, was not resold and could only be resold to one in the tobacco trade and that the imported tobacco was imported for the use of the importer in making Old Gold cigarettes. It was the view of the trial court that it was immaterial whether the tobacco was imported for sale or was to be used by the importer. This, we think, was the correct conclusion.

Surely, Congress did not contemplate that the collector, in determining whether or not an importation was sufficiently marked, should be required to follow the tobacco into consumption or first ascertain that it was imported for use by the importer and hold the marking sufficient in that instance and not sufficient in another instance where there was a possibility of its being resold. Such a construction of the law would lead us far afield.

It is within common knowledge that most imported merchandise enters into our domestic commerce and is sold, resold and handled by numerous parties. We think Congress was concerned in having those who came in contact with the goods either as purchasers or consumers fully advised as to the country of their origin and intended that all importations, subject to the provision under consideration, should be so marked as to indicate clearly such country of origin, irrespective of what might later happen to the merchandise in this country. To sustain appellant's contention would, we think, reduce the enactment to an absurdity. It is easy to conceive of a single article produced in an obscure hamlet in Germany which might be purchased by a person in this country to be used only by himself and that he would be the only person who knew exactly where it originated. In this supposed case, according to appellant's contention, the statute would be complied with if the name of the obscure hamlet was placed upon the article. A different rule would have to be made for the same article, however, if it developed that it was sold a number of times here, or if the article in great quantities went out into commerce and was purchased and used by the purchasing public in general.

Appellant's contention would lead to the conclusion that different standards of marking would be proper for each of thousands of different articles all imported from the same country. Moreover, a marking which would be sufficient today might not be sufficient tomorrow, if there were certain changes in the use of the merchandise or in the manner of dealing in it. It seems clear that this construction of the law would lead to anomalous results. Importers of merchandise and customs administrative officials could not, with any degree of certainty, carry out the mandate of the legislature.

It may be that there are certain countries having possessions or dependencies, the names of which, if placed upon imported goods would indicate clearly the country of origin, but we are not convinced that the trial court erred in holding that the marking here under consideration, which included the word "Samos", *indicated* that the country of origin was Greece. We agree with the importer that the law does not require that the importation be marked with the *name* of the country in which the goods originate. The statute says *"indicate the country of origin."* In the metal paragraphs 354, 355, 357, 358,

359, 360, and 361, of the Tariff Act of 1930, Congress, in requiring that the articles therein contained should be marked in a certain manner, said *"the name of the country of origin."* In the same act, in paragraph 1553, relating to thermostatic bottles, etc., is used the same term, while in the watch paragraph, 367, and the clock paragraph, 368, is used the term "the *name* of the country of manufacture." [All italics ours.] In these provisions, Congress definitely prescribed that the *name* of the country should be used. However, this consideration does not suggest that by using the term "indicate", Congress meant that all that was necessary to be done was to "hint" at the country of origin (*American Burtonizing Co.* v. *United States*, 13 Ct. Cust. Appls. 652, T. D. 41489) or that, in every instance, it would be sufficient to mark the goods with the name of a place which might be found to be in or a part of the country of origin, only after research and investigation had been made.

The statutory requirement that imported merchandise shall be marked so as to "indicate the country of origin," we think is not complied with by merely printing a name thereon which so *indicates* to only a few who happen to be particularly well-informed about the particular importation and the place where it originated. To hold, upon the record at bar, that "Samos" indicates Greece sufficiently to comply with the statute would warrant a further holding that a marking of imported goods with the name of one of many unimportant islands and places concerning which there is little generally known and which ordinarily would not properly convey the desired information would be a sufficient compliance with the statute merely because the importer was able to prove that those who came in contact with that kind of merchandise at the time the testimony was taken happened to know, perhaps under exceptional circumstances, that such places belonged to or were parts of another country.

It is our view that the importer of merchandise, upon which the name of the country of origin is not placed, has not sufficiently *indicated* the country of origin of his goods, if in order to determine whether he has complied with the statute it is necessary and indispensable to consult geographies, maps, encyclopaedias or histories. It is presumed that both the exporter and the importer know the country of the origin of their goods. It is no greater burden for them to cause to be placed upon the importation the name of the country of origin or some other term which will definitely indicate that country, than to have placed thereon a term which does not adequately do so. To require less certainty in marking than we have herein suggested would be to invite subterfuge and deceit and a lack of compliance with that which Congress regarded as important.

We have discussed hereinbefore the failure of the trial court to admit certain testimony. We have carefully examined the record

referred to by appellant's assignments of error and find no testimony excluded which, if admitted, would bring us to a different conclusion than that herein reached. It follows that even if certain parts of the offered testimony were for some purpose or purposes competent, it would not be reversible error, under the circumstances at bar, to exclude them, and we so hold.

The judgment of the United States Customs Court is *affirmed*.

GRAHAM, Presiding Judge: I concur with Judge Bland in the foregoing opinion.

LENROOT, Judge, specially concurring:

I concur in the conclusion reached in the opinion by Judge Bland upon the ground that the evidence in the record fails to establish that all purchasers of bales of Samos tobacco, in the condition in which imported, had knowledge that Samos is a possession of Greece. Neither is there in the record any offer of proof to that effect.

The testimony shows that Samos tobacco is used only in the manufacture of cigarettes; that there are four principal manufacturers of cigarettes in the United States; and that there are also in this country thousands of small manufacturers, some of which use Samos tobacco, sometimes purchasing the same by the bale in the condition in which it is imported.

While there is testimony to the effect that the tobacco trade generally knows that the island of Samos is a possession of Greece, none of appellant's witnesses was qualified, in my opinion, to testify that all of the small manufacturers of cigarettes, in purchasing Samos tobacco by the bale in the condition in which imported, understood that the island of Samos is a possession of Greece.

The marking statute was enacted for the protection of all purchasers and users of imported products. The testimony wholly fails to establish that all purchasers of Samos tobacco by the bale understood that the island of Samos is a possession of Greece.

I therefore agree that the judgment of the United States Customs Court should be affirmed.

### DISSENTING OPINION

GARRETT, Judge: I feel that the judgment of the United States Customs Court should be reversed.

During the trial of this case the following statement was made by counsel for the Government:

Mr. FITZGIBBON. The Government is willing to concede tobacco in question was grown on the Island of Samos, and Samos, is part of the political structure of the country of Greece and that the merchandise was marked with the word "Samos" on it. However, we are not willing to concede everybody that buys tobacco knows Samos is an island or a part of Greece, or that every tobacco from Samos is only used for cigarettes.

Under my view of the case, the concession that the tobacco was grown upon the Island of Samos is all-important. The further concession that Samos is a part of the political structure of the country of Greece would not of itself be controlling, even under my view, because, as I shall endeavor to point out, much may depend upon just what "part" it is. This I say because of the expression in the opinion written by Judge Bland and concurred in by the presiding judge relative to "a single article produced in an obscure hamlet in Germany * * *." Also, I may say that counsel's refusal to concede that "everybody that buys tobacco knows Samos is an island or a part of Greece, or that every tobacco from Samos is only used for cigarettes," and a failure on part of appellant to prove such do not, in my opinion, affect the real issue here, which is, whether, under a proper construction of section 304 of the Tariff Act of 1930, "Samos" was sufficient to "indicate the country of origin" of the tobacco.

There are two theories, under either of which, it seems to me, appellant is entitled to prevail.

First, in view of the relationship of Samos to Greece, I am of opinion that, even treating Greece broadly as the country of origin, the mark "Samos" was sufficient to *indicate* such country.

Second, in view of the governmental structure of Samos, it may itself very well be regarded as a country within the meaning of the marking statute.

We do not have to look further than the "Pronouncing Gazetteer" of Webster's New International Dictionary to learn that Samos is a "nome of Greece." The same authority defines "nome" as "A province of modern Greece or of ancient Egypt; a nomarchy," and defines "nomarchy" as "A province of the modern kingdom of Greece; a nome."

In the Encyclopaedia Britannica article, from which the opinion by Judge Bland quotes, is found the following:

During the Greek War of Independence [1821–1833] Samos bore a conspicuous part, and it was in the strait between the island and Mt. Mycale that Canaris blew up a Turkish frigate, in the presence of the army assembled for invasion. The enterprise was abandoned and Samos held its own to the end of the war. On the conclusion of peace the island was, indeed, again handed over to the Turks, but since 1835 held an exceptionally advantageous position, being in fact self-governed, though tributary to the Turkish empire, and ruled by a Greek governor nominated by the Porte, who had the title of "Prince of Samos," and was supported and controlled by a Greek council and assembly. The prosperity of the island bore witness to the wisdom of this arrangement, but did not prevent annexation to Greece when the political situation allowed it.

The Encyclopaedia Britannica also informs us that the *capital* of Samos is Vathy. So, from standard authorities the island seems to be practically a self-governing nome, having a capital, a governor, a

council and an assembly. Except perhaps as to size, what more have many of the units of the British Empire, the names of which units stamped upon merchandise would, I apprehend, be held without hesitation sufficient to meet the statutory marking requirement?

That Samos was affiliated with Greece in a governmental sense, of course, was known to the Collector of Customs when he issued the order to have the bales of tobacco marked "Greece." Otherwise, how could he have determined that Greece was the "country of origin"? It is not inappropriate to say that the consular invoice of the merchandise is marked "Dated at Vathy-Samos, Greece, this 24th day of December 1933," and I find nothing in the record upon which to base a conclusion that the merchandise was ever in what, for lack of a better term, may be referred to as the Grecian mainland.

I confess with some reluctance, admitting the fault probably to be mine, that I do not quite understand the theory upon which the decision as expressed in the opinion by Judge Bland is predicated. The opinion concedes that there may be "certain countries having possessions or dependencies, the names of which, if placed upon imported goods would indicate clearly the country of origin." It is also agreed that "the law does not require that the importation be marked with the *name* of the country in which the goods originate," and the distinction between section 304 (the general marking statute) and other specific sections, which do require that the *name* of the country be stamped upon certain goods, is pointed out. Nevertheless it is held that the instant merchandise did require the name "Greece" to be stamped upon the burlap covering, and that the name "Samos" was not sufficient to indicate the country of origin, although the island was conceded by Government counsel to be the place where the tobacco was actually grown.

The opinion does suggest that Congress, by using the term "indicate," did not mean that all that was necessary to be done was to "hint" at the country of origin. I quite agree with the suggestion. It is supported by both authority and reason, but marking the tobacco here involved "Samos" to my mind was much more than a hint.

The opinion further says:

It is our view that the importer of merchandise, upon which the name of the country of origin is not placed, has not sufficiently *indicated* the country of origin of his goods, if in order to determine whether he has complied with the statute it is necessary and indispensable to consult geographies, maps, encyclopaedias, or histories. It is presumed that both the exporter and the importer know the country of the origin of their goods. It is no greater burden for them to cause to be placed upon the importation the name of the country of origin or some other term which will definitely indicate that country, than to have placed thereon a term which does not adequately do so. To require less certainty in marking than we have herein suggested would be to invite subterfuge and deceit and a lack of compliance with that which Congress regarded as important.

I am unable to subscribe to what I understand to be the full purport of the foregoing declaration. It seems to me clearly to make the issue determinable upon the extent of the general public's geographical and historical knowledge. This I do not believe constitutes the true test contemplated by the statute. As has been indicated, the real political status of Samos may be learned by reference to only two pages of Webster's New International Dictionary. This requires no herculean efforts, mental or other. Were we forbidden to utilize dictionaries and encyclopaedias, it would be well-nigh impossible properly to prepare many of the opinions of this court.

It is noted particularly that the opinion in the paragraph last quoted above refers to "* * * the name of the country of origin or *some other term* which will definitely indicate that country." [Italics mine.] I think "Samos" is "some other term" which definitely indicates the country of origin in this case.

This, I would emphasize, is due to the known, or readily ascertainable, status of Samos. I am not of the opinion that the name of some "obscure hamlet," that is (as "hamlet" is defined by Webster) "a little cluster of houses in the country," stamped upon the merchandise would be a sufficient marking. A correct sense of proportion must be observed, but I regard Samos as being more than an obscure hamlet.

Insofar as inviting "subterfuge and deceit" is concerned, I am unable to see where such would be invited by using the name of the territory on which the product actually grew. In any event, there is no claim of any subterfuge or deceit in the instant case.

So far my discussion has related to the first theory stated near the beginning of this opinion.

I turn now to the second theory, viz., that, in the sense of the statute, Samos by itself properly may be classed as a "country."

Neither the opinion by Judge Bland nor that by Judge Lenroot discusses the meaning of "country" as used in the statute. It seems clear, however, that they do not construe the term as being synonymous with a sovereignty. It seems to me that the issue before us renders it not only proper but necessary to consider the meaning of the term, and here again we may turn to Webster for aid. One of the definitions of "country" given by this authority is:

The territory of a nation; a state, *whether independent or not*, that is distinct as to name and the character, language, institutions, or historical memories of its people * * *. [Italics mine.]

Enough already has been quoted from the Encyclopaedia Britannica to indicate that the Island of Samos, while now affiliated with Greece (not, as I understand it, as a "possession," but as a coordinate self-governing unit of the latter) has a distinct name and a distinct history.

Further quotation might be made from the same authority showing a distinct political, cultural and commercial history extending back to the Eleventh Century B. C. During the far greater part of thirty centuries it has been autonomous. That its political status is fully recognized by our Government is evidenced by the presence at its capital city of a United States vice consul. Small in area though it be, I regard it as a country within the meaning of that term as used in section 304 of the Tariff Act of 1930.

Under the view which I take of the case, I do not deem it necessary to a decision that the questions relating to certain evidence on behalf of importer be considered. I regard the facts of which the court may, and should, take judicial notice sufficient to require sustaining the protest.

HATFIELD, Judge, concurs in the foregoing dissenting opinion.