24 C.C.P.A.(Customs)

### E. C. MILLER CEDAR LUMBER CO. v. UNITED STATES et al.

Customs Appeal No. 4002.

Court of Customs and Patent Appeals.
Nov. 30, 1936.

Pickrell & McDonald, of New York City (Eugene R. Pickrell, of New York City, of counsel), for appellant.

Allan R. Brown and Fred J. Carter, both of New York City, for appellees, parties in interest.

Joseph R. Jackson, Asst. Atty. Gen. (Ralph Folks, Sp. Atty., of New York City, of counsel), for the United States.

Charles H. Paul, of Longview, Wash., amicus curiæ.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court, First Division, dismissing the protest of appellant, an American manufacturer, against the assessment of duties, by the collector at the Port of Seattle, Wash., on certain imported lumber.

The merchandise in question, imported into the United States from the Dominion of Canada, is described in the brief of counsel for appellant in the following manner: " * * * (1) beveled cedar siding lumber dressed on all four sides, one-half inch thick on one side and tapering to a feather edge on the other side, by six inches in width, sawed from rough lumber one inch in thickness by six inches in width, and (2) fir ceiling lumber, dressed and beaded on two sides, nine-sixteenths inch in thickness, by four inches in width, by four to eighteen feet in length, sawed from rough lumber three-quarters inch or twelve-sixteenths inch in thickness. * * *"

That description has not been questioned by counsel for appellee, and we assume it is correct.

The collector classified the beveled cedar siding lumber as free of duty under paragraph 1803, § 201 of the Tariff Act of 1930 (19 U.S.C.A. § 1201, par. 1803), but assessed it with duty at $3 per thousand feet, board measure, under section 601(c) (6) of the Revenue Act of 1932 (47 Stat. 260, 26 U.S.C.A. § 1420 et seq. note), and assessed the fir ceiling lumber with duty at the rate of $1 per thousand feet, board measure, under paragraph 401, § 1, of the Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 401), and at $3 per thousand feet, board measure, under section 601(c) (6), supra.

The pertinent parts of paragraphs 401 and 1803, supra, and section 601(c) (6), supra, read:

"Par. 401. Timber hewn, sided, or squared, otherwise than by sawing, and round timber used for spars or in building wharves; sawed lumber and timber not specially provided for; all the foregoing, if of fir, spruce, pine, hemlock, or larch, $1 per thousand feet, board measure, and in estimating board measure for the purposes of this paragraph no deduction shall be made on account of planing, tonguing, and grooving."

"Par. 1803. Wood: (1) Timber hewn, sided, or squared, otherwise than by sawing, and round timber used for spars or in building wharves; sawed lumber and timber, not further manufactured than planed, and tongued and grooved; all the foregoing not specially provided for."

Section 601(c) (6). "Lumber, rough, or planed or dressed on óne or more sides, except flooring made of maple (except Japanese maple), birch, and beech, $3 per thousand feet, board measure; but the tax on the articles described in this paragraph shall apply only with respect to the importation of such articles."

The pertinent part of appellant's protest reads: "Protestant contends that lumber of a character ordinarily produced by resawing to the thickness of less than one inch, such as bevel siding, boards, etc., and items of lumber such as ceiling, partition, boards, etc., which may be produced by the surfacing of lumber the rough size of which before surfacing was less than one inch thick, should be assessed as though such lumber were one inch thick. It has long been the common understanding in commercial practice in the measurement of lumber for sale throughout the United States to compute the board measure contents of lumber less than one inch thick as though it were one inch. This practice is universally followed throughout the lumber industry."

It appears from the report of the collector that he computed the "board-measure content" in the following manner:

"Beveled Cedar Siding: In computing the board-measure content, this office took one-half of the board-measure content of the rough piece of lumber from which the board was cut.

"Fir Ceiling: In computing the board-measure content of fir ceiling, this office took the invoiced rough thickness of three-fourths inch for each piece.

. "In the above connection this office followed the instructions contained in T. D.'s 46250 and 47621."

A motion to dismiss the protest was filed in the trial court by counsel for the importer, upon the ground that the court had no jurisdiction to determine the issues

in the case, because, it was claimed, the protest did not raise any question as to the classification or the rate or rates of duty assessed by the collector, and, therefore, did not comply with the provisions of section 516(b) of the Tariff Act of 1930, 19 U.S.C.A. § 1516(b).

The trial court, in an opinion by McClelland, P. J., Brown, J., specially concurring, granted the motion and dismissed the protest on the ground that section 516 (b), supra, limited the rights of an American manufacturer to protest the classification by the collector or the rate or rates of duty assessed by him on imported merchandise, and that the protest raised neither of those issues.

Accordingly, the issue presented by this appeal is whether an American manufacturer's protest against the method or manner of the collector's determination of "board measure" raises an issue of either classification or rate or rates of duty, within the purview of section 516(b), supra.

Section 516(b) reads: "Classification. The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the *classification of and the rate of duty,* if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the *proper rate of duty* is not being assessed, he may file a complaint with the Secretary of the Treasury setting forth a description of the merchandise, *the classification,* and the *rate or rates of duty* he believes proper, and the reasons for his belief. If the Secretary decides that *the classification of or rate of duty* assessed upon the merchandise is not correct, he shall notify the collectors as to the proper *classification and rate of duty* and shall so inform such manufacturer, producer, or wholesaler, and *such rate of duty* shall be assessed upon all such merchandise imported or withdrawn from warehouse after thirty days after the date of such notice to the collectors. If the Secretary decides that the *classification and rate of duty* are correct, he shall so inform such manufacturer, producer, or wholesaler, and shall, under such regulations as he may prescribe, cause publication to be made of his decision, together with notice that *the classification of and the rate of duty* on all such merchandise imported or withdrawn from warehouse after the expiration of thirty days after such publication will be subject to the decision of the United States Customs Court in the event that a protest is filed under the provisions of this subdivision. If dissatisfied with the decision of the Secretary, such manufacturer, producer, or wholesaler may file with him a notice that he desires to *protest the classification or the rate of duty imposed* upon the merchandise, and upon receipt of such notice the Secretary shall furnish him with such information as to the entries and consignees of such merchandise, entered after the expiration of thirty days after the publication of the decision of the Secretary, at the port of entry designated by the manufacturer, producer, or wholesaler in his notice of desire to protest, as *will enable him to protest the classification of or the rate of duty imposed* upon such merchandise when liquidated at such port. The Secretary shall direct the collector at such port to notify such manufacturer, producer, or wholesaler immediately upon the liquidation of the first of such entries to be liquidated. Such manufacturer, producer, or wholesaler may file, within thirty days after the date of such liquidation, with the collector of such port a protest in writing setting forth a description of the merchandise and *the classification and the rate of duty he believes proper.* * * * If, upon appeal to the Court of Customs and Patent Appeals, the decision of the United States Customs Court is reversed, the *classification* of the merchandise *and the rate of duty imposed* thereon shall be in accordance with the decision of the Court of Customs and Patent Appeals, and any necessary reliquidation shall be made." (Italics ours.)

Subsection (c) of that section, 19 U. S.C.A. § 1516(c), provides that, in addition to determining value in a reappraisement case, the United States Customs Court shall, in a case involving an American manufacturer's protest, determine the "proper classification and rate of duty."

■ Prior to the oral arguments in this court, counsel for the importer, one of the appellees, filed a motion to dismiss the appeal, claiming that the right of an American manufacturer to appeal from a judgment of the United States Customs Court involving lumber, under section 516 (b), supra, had been taken away by the provisions of section 2(a) of the act of

June 12, 1934, amending title 3 of the Tariff Act of 1930 by adding section 350 (a) (1) and (2), (b), and (c), section 2 (a), (b), and (c), section 3, and section 4, chapter 474, 48 Stat. 943 (19 U.S.C.A. §§ 1351(a), (1, 2), (b, c), 1352(a–c), 1353, 1354), by virtue of the fact that, on December 2, 1935, the President issued a proclamation—T. D. 48033—in accordance with section 350(a) (2), supra, announcing that a trade agreement had been concluded on November 15, 1935, between the United States and the Dominion of Canada, under which the rates of duty on sawed lumber and timber, not specially provided for, under paragraph 401, supra, imported into the United States after January 1, 1936, had been reduced from $1 per thousand feet "board measure" to 50 cents per thousand feet "board measure," and the duty of $3 per thousand feet "board measure," under section 601(c) (6) of the Revenue Act of 1932, had been reduced to $1.50 per thousand feet "board measure," and that the appeal in this cause was not filed in this court until April 2, 1936.

The provisions of section 2 (a), 19 U. S.C.A. § 1352(a) supra, relied upon by counsel for the importer read: "The provisions of sections 336 and 516(b) of the Tariff Act of 1930 [sections 1336 and 1516 (b) of this title] shall not apply to any article with respect to the importation of which into the United States a foreign trade agreement has been concluded pursuant to this Act [Part III of this subtitle], or to any provision of any such agreement."

Section 350(a) (1) and (2) (19 U.S.C. A. § 1351(a) (1, 2), after stating that the purpose of the act is to expand foreign markets for the products of the United States, and for other reasons, authorizes the President to enter into foreign-trade agreements, and to proclaim such modifications of existing duty, etc., as are provided in such trade agreements, provided, however, that "no proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists."

We have not attempted to recite here the substance of all of the provisions of the act, because they are not pertinent to this discussion.

We quote from the memorandum filed by counsel for the importer in support of the motion to dismiss the appeal: "* * * It was evidently the intention of Congress, as evidenced by Section 350 of the Tariff Act of 1930 as amended by the Act of June 12, 1934, to prevent any change in duty on a commodity as to which a trade agreement had been entered into, by virtue of any finding by the Tariff Commission or any activity of domestic interests. The appeals by domestic interests in this case were taken not only subsequent to the conclusion of the trade agreement with Canada, but subsequent to its effective date."

We deem it unnecessary here to state or discuss in detail the various propositions advanced by counsel for the parties as to the merits or demerits of the motion to dismiss the appeal, for the reason that we think it is perfectly clear from the statute—section 2(a), supra—that it was the intention of the Congress to provide that the provisions of section 516(b), supra, should not apply to articles, *subsequently imported,* with respect to which the United States had entered into a foreign-trade agreement, and that it was not the intention of the Congress to provide that the provisions of 516(b), supra, should be inoperative as to articles, previously imported, with respect to which the United States had entered into a foreign-trade agreement.

Obviously, it was not the purpose of the Congress to provide that the President might enter into a foreign-trade agreement for the purpose of either raising or lowering the duties provided for in the act of 1930 on merchandise imported prior to such trade agreements. We find nothing in the act that even remotely suggests any such purpose. It would seem to be clear that the language of the quoted provisions of section 2(a), supra, was intended to make the provisions of section 516 (b), supra, inoperative as to articles covered by any such trade agreements and imported subsequent to the effective date thereof. Certainly, there is nothing in the act to indicate that the Congress intended that the provisions of section 2(a), supra, should be retroactive, nor can any proper inference be drawn therefrom that such was its intention. That being so, the provisions in question ought not to be given retroactive operation. See Porto Rico Brokerage Co., Inc., et al. v. United States, 71 F.(2d) 469, 22 C.C.P.A. (Customs) 236, 240, T.D. 47156, and authorities therein cited.

The purpose of the Congress, we think, was well stated by counsel for the importer in the quoted excerpt from their memorandum filed with the motion to dismiss the appeal.

We are of opinion, therefore, that the motion to dismiss the appeal is not well taken, and it is, accordingly, denied.

We will now proceed to a consideration of the issues presented by the appeal.

It is contended by counsel for appellant that the words "board measure," contained in paragraph 401, supra, and section 601(c) (6), supra, are "as an integral part of the rates of duty as '$3' and '$1'"; that the phrase "rate of duty," contained in section 516(b), supra, includes the *amount of duty* assessed against imported merchandise; and that it was the intention of the Congress, by the provisions of section 516(b), supra, to grant to an American manufacturer the right to contest "the legality of an order or finding entering into the fixing of a rate of duty of imported merchandise."

Counsel for appellant, in addition to citing definitions of the term "rate" from various lexicographers, has quoted the following from 52 C.J. p. 1140, § 1: "Rate A. In General. 'Rate' is a flexible term, of which many definitions are to be found; and what it means in a particular instance must depend upon the context and subject matter. It may mean amount; degree; percentage; price; proportion; proportion or standard; ratio; sum; value. Also, the term may be employed as meaning a fixed measure of estimation; the measure of a thing by its ratio or relation to some fixed standard; a rule or measure of assessment; proportional estimation according to some standard."

It is further contended by counsel for appellant that, in the case of Bradford Co. et al. (United States impleaded) v. American Lithographic Co., 12 Cust.App. 318, T.D. 40318, this court interpreted the phrase "rate of duty," contained in section 516(b) of the Tariff Act of 1922 (19 U.S.C.A. § 401), to mean *amount of duty* assessed against imported merchandise; that the decision in that case was called to the attention of the Congress at the time section 516(b) of the Tariff Act of 1930, 19 U.S.C.A. § 1516(b), was before it for consideration; and that, under the doctrine of legislative sanction of judicial interpretation, the phrase "rate of duty," contained in section 516(b), supra, means the amount of duty.

Counsel for appellant also rely upon the decision in the case of United States v. Vietor, 1 Cust.App. 297, T.D. 31355, wherein this court had under consideration appliquéed articles which were provided for under section 1 paragraph 402, Schedule L. of the Tariff Act of 1909 (36 Stat. 60). The pertinent part of the paragraph read: "articles * * * appliquéed; * * * all of the foregoing composed of silk, or of silk and metal, or of which silk is the component material of chief value, * * * not specially provided for in this section, * * * sixty per centum ad valorem; * * * Provided further, That tamboured, embroidered, or appliquéed articles or fabrics shall pay no less rate of duty than that imposed upon the material if not so tamboured, embroidered, or appliquéed."

Paragraph 399 of that act provided, among other things, for "Woven fabrics in the piece, composed wholly or in chief value of silk, not specially provided for in this section, weighing not more than one-third of one ounce per square yard, four dollars per pound * * *.

The court there held that the proviso to paragraph 402, supra, contemplated that the imported articles should bear no less rate of duty than that borne by the material out of which they were made, had it been imported and assessed under paragraph 399, supra.

We find nothing in the decision in that case to support the position of counsel for appellant. The question here involved was not there presented.

Counsel for appellant also cite Feltex Corp. v. Dutchess Hat Works, 71 F.(2d) 322, 327, 21 C.C.P.A. (Customs) 463, T. D. 46957, wherein it was held that an American manufacturer had a right, under the provisions of section 516(b), supra, to contest the legality of any order or finding entering into the fixing of the rate of duty proclaimed by the President under section 336(a) and (c) of the Tariff Act of 1930, 19 U.S.C.A. § 1336(a, c), and "might protest the *rate of duty assessed* against importations to the same extent, so far as judicial review is concerned, as an importer might do under the provisions of section 514 (19 U.S.C.A. § 1514), providing for protests by importers against decisions of the collector." (Italics ours.)

434

It will be observed that the court was there discussing *rate,* not amount, of duty, as counsel for appellant seem to think.

In the case of Bradford Co. et al., supra, the precise issues before this court were: First, whether a package of cigar bands, or each individual cigar band, was an article within the provisions of the so-called marking statute—section 304(a) of the Tariff Act of 1922, 19 U.S.C.A. § 132(a); second, whether the act of the collector in determining whether an article was, under the law, required to be marked so as to indicate the country of origin was included within the term "classification," as used in paragraph 516 (b) of the Tariff Act of 1922 (19 U.S.C.A. § 401).

In discussing those two issues, the court quoted the following definition of the word "rate" from the Century Dictionary: "Charge or a valuation according to a scale or standard; comparative price or amount of demands," and said: "We think that a proper interpretation of the phrase, 'rate of duty,' as it is used in section 516(b), supra, means the amount of duty assessed against imported merchandise, *resulting in the first instance, from the classification thereof.*" (Italics ours.)

In explanation of that statement, we said: "No other fair conclusion can be reached, we think, without a strained interpretation of the provisions of the section, expressive of the legislative intent as it plainly appears therein, that is, to extend to the American manufacturer, producer, or wholesaler the right to protest a *classification* of imported merchandise of a class and kind manufactured, produced, or sold at wholesale by him, and the *rate of duty* assessed thereon, if in his opinion such *classification* is wrong and the *rate of duty* assessed improper." (Italics ours.)

Obviously, we did not intend to construe the word "rate" to be the equivalent of, nor to include, the total amount of duty assessed against imported merchandise, and we there specifically pointed out that it was the purpose of the Congress, by the provisions of section 516(b), supra, to extend to the American manufacturer the right to protest against the *classification or the rate of duty* assessed on imported merchandise. We are of opinion, therefore, that the decision in that case does not support the views urged by counsel for appellant.

It will be observed that the word "classification" and the phrase "rate of duty" appear repeatedly in section 516(b) of the Tariff Act of 1930, but nowhere in that section does the phrase "amount of duty" appear; whereas, section 514 of that act (19 U.S.C.A. § 1514) specifically provides that an importer may protest not only as to the rate, but also as to the amount, of duties assessed against his merchandise, and further gives him the right to contest the legality of all orders and findings entering into the fixing of such rate and amount of duties.

The Congress has clearly distinguished between "rate of duty" and "amount of duty" in section 514, supra, and, for perfectly obvious reasons, has given the importer the right to protest against either or both in that section. Furthermore, in section 516(a) the Congress provided that an American manufacturer might, where the appraised value of imported merchandise was not satisfactory, and no appeal to reappraisement was filed by the collector, file an "appeal for a reappraisement in the same manner *and with the same effect* as an appeal by a consignee under the provisions of section 501 of this Act [section 1501 of this title]." (Italics ours.)

However, whatever its reasons might have been, the Congress did not extend to the American manufacturer the right to protest against the *amount of duty* assessed against imported merchandise, but limited its right of protest to the classification thereof, and the rate or rates of duty assessed thereon. It did not authorize the American manufacturer to protest against the collector's decision as to the weights, measures, and quantities of imported merchandise, nor to challenge the correctness of the collector's orders and findings, unless the proper classification of such merchandise, or the assessment of the proper rate or rates of duty thereon, depended upon such weights, measures, quantities, and orders and findings of the collector. No doubt, the Congress assumed that, unless the classification of imported merchandise, and the rate or rates of duty to be assessed thereon, depended upon the orders and findings entering into the collector's decision, such orders and findings might safely be left to the customs officials, giving the import-

ers only the right to challenge their correctness.

Desiring, however, to give American manufacturers the right to aid in the interpretation and construction of the law, and to give them full protection thereunder, the Congress did provide that such manufacturers might protest against the classification of imported merchandise, and the rate or rates of duty assessed thereon by the collector.

Indeed, it is stated in the brief of amicus curiæ, Charles H. Paul, whose name is attached to the protest as counsel for the protestant, that there are some questions relating to the amount of duty in which the American manufacturer is not interested. It is argued, however, that where the amount of duty is involved in a determination of the rate of duty, the manufacturer is vitally interested, and has a right to protest under section 516(b) supra.

The phrase "rate of duty" has various definitions, and "what it means in a particular instance must depend upon the context and subject matter, * * *" etc. 52 C.J. p. 1140, § 1, supra.

We are of opinion that "rate of duty," as used in section 516(b), supra, was not intended by the Congress to be the equivalent of, nor to include, the amount of duties assessed against imported merchandise, except in a case, if any, where the amount of duty is necessarily involved either in the proper classification of such merchandise, or in a proper determination of the rate or rates of duty to be assessed thereon.

We will now proceed to consider whether, in order to determine the rate or rates of duty applicable to the involved merchandise, it was necessary for the collector to take into account the "board measure" of such merchandise.

It is conceded by counsel for appellant, and by amicus curiæ that the collector properly classified the fir ceiling lumber, and applied the $1 rate of duty provided in paragraph 401, supra, and the $3 rate of duty provided in section 601(c) (6), supra; that he correctly classified the beveled cedar siding lumber as free of duty under paragraph 1803, supra; and that he applied the $3 rate of duty provided by section 601(c) (6), supra.

The complaint made by counsel for appellant and amicus curiæ against the assessments is that, in determining the "board measure," the collector used the wrong formulas; that by the formula used in determining the "board measure" of the beveled cedar siding lumber, he took one-half of the board-measure content of the rough piece of lumber from which the board was cut, as stated in his report, instead of the formula used in commercial practice, set forth in the quoted excerpt from appellant's protest; that, in determining the "board measure" of the fir ceiling lumber, he took the invoiced rough thickness of three-fourths inch for each piece, as stated in his report, instead of the formula used in commercial practice, set forth in the quoted excerpt from appellant's protest; and that, by using such formulas, he assessed duty on a less quantity of lumber than that which the law contemplated.

The Assistant Attorney General, Division of Customs, has taken the position in this court, as we understand it, that if the collector used the wrong formulas in determining the "board measure" of the involved merchandise, as claimed by counsel for appellant and amicus curiæ, appellant's protest properly raised the issue as to the correctness of the rate or rates of duty assessed thereon, and that, therefore, the court below had "jurisdiction of the issue, unless barred by the provisions of the so-called Trade Agreement Act as indicated by brief for parties in interest. * * *"

Of course, if the collector did use the wrong formulas in ascertaining "board measure," and used the rates of duty provided by statute on a less quantum of lumber than that contemplated by the statutes in question, it could be argued with some plausibility that the effect of his decision was to reduce the rates of duty provided therein. Such an argument could always be made where the collector assesses the correct rate of duty, but makes an error in determining the correct amount of imported merchandise and assesses duty on a less quantity than that imported. To illustrate: If, as a matter of fact, 100 bushels of wheat were imported into the United States, and the duty thereon was $1 per bushel, and the collector concluded that there were but 90 bushels, and assessed that quantity at the statutory rate of $1 per bushel, he, in effect, reduced the rate of duty to 90 cents per bushel.

Of course, there are instances, which we deem it unnecessary to recite here, where it is necessary, in order to deter-

mine the proper rate or rates of duty, for the collector to consider various factors, such as, value, weight, use, etc., and, if, in such instances, an error is made and the wrong rate or rates of duty applied, the American manufacturer has a right to protest, because, in the last analysis, what the collector did was to use those factors, or some of them, in determining the rate or rates of duty to be assessed against such merchandise. However, that is not the situation in the case at bar.

The rates of duty provided by the statutes in question did not depend upon a determination of the "board measure" of the imported lumber. Assuming that the collector used the wrong formulas, as claimed by counsel for appellant and amicus curiæ, and, as a result, assessed duty on a less quantum of lumber than the statute contemplated, the most that can be said is that, although the proper statutory rate or rates of duty were applied, a less *amount of duty* was assessed than the statute contemplated. So that, in the last analysis, what really is claimed here is that the collector assessed a less amount of duty than should have been assessed against the imported merchandise. We have already disposed of that question.

We are of opinion, therefore, as was the trial court, that section 516(b), supra, authorizes but limits the authority of an American manufacturer to protest against the classification of imported merchandise and the rate or rates of duty assessed thereon, and that the protest in this case did not raise either of those issues. Accordingly, appellant's protest was properly dismissed by the trial court.

For the reasons stated, the motion to dismiss the appeal is denied, and the judgment of the trial court is affirmed.

Affirmed.