H. L. GWALTER & CO., INC., ETC. *v.* UNITED STATES (No. 4253)[1]

United States Court of Customs and Patent Appeals, June 15, 1942

Lane & Wallace (*Thomas M. Lane* of counsel) for appellants.
*Paul P. Rao*, Assistant Attorney General, for the United States.

[1] C. A. D. 212.

[Oral argument April 9, 1942, by Mr. Thomas M. Lane and Mr. Rao]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

PER CURIAM: In the above-entitled case appellants have, by motion, asked this court for a judgment reversing the judgment of the United States Customs Court and remanding the cause with directions that judgment be entered by said court dismissing the protests upon the ground that the controversy raised thereby has become moot or has ceased to present a proper subject for judicial action. The appellant Cotonificio Bustese is a corporation organized under the laws of the Kingdom of Italy. It was the owner of 1,949 bales of Italian raw silk, valued at the sum of $691,068, which were imported into the United States at the port of New York, subject to the Tariff Act of 1930, during the latter part of 1935 and the early part of 1936. The entries were made by Frederic Henjes, Jr., Inc., acting as customhouse broker. H. L. Gwalter & Co., Inc., was the agent for Cotonificio Bustese and was the ultimate consignee of the imported material.

Raw silk is free of duty under paragraph 1763 of the Tariff Act of 1930. The marking of the goods—the silk *per se*—was not required, but the marking of the containers of such silk so as to indicate, at the time of importation, the country from which exported, was required. Neither the imported silk nor the containers were marked in the manner required by section 304 (a) of said act when the importations were made. The Collector of Customs at the port of New York refused delivery of the silk from customs custody until an amount equal to 10 per centum of the value of said silk should be paid to and deposited with him to cover the additional duty required by section 304 (b) of the act, and until the importations were marked in accordance with the provisions of the statute.

Section 304 (b) of the Tariff Act of 1930 reads as follows:

SEC. 304. (b) ADDITIONAL DUTIES FOR FAILURE TO MARK.

If at the time of importation any article or its container is not marked, stamped, branded, or labeled in accordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof.

After the required amount was deposited and the containers were properly marked, the imported merchandise was released to the consignee. Assessment of the additional duty required by statute by reason of the unmarked condition of the containers at the time of importation was delayed pending action upon a petition filed with the Secretary of the Treasury for remission or mitigation thereof.

While the silk was in the custody of the collector and before deposit of all or any part of the sum of $69,106.80, claimed by the collector to

be due by reason of the omission of the marking of the country of origin, the appellant Cotonificio Bustese, on February 17, 1936, allegedly proceeding under section 618 of the Tariff Act of 1930, filed with the Secretary of the Treasury a petition wherein the appellant set forth the facts relative to the importation, alleging that the omission was made without any intention on the part of the appellant to defraud the revenue or to violate the law and that such mitigating circumstances existed as to justify the remission or mitigation of the amount demanded by the collector.

Section 618 of the Tariff Act of 1930 reads as follows:

SEC. 618. REMISSION OR MITIGATION OF PENALTIES.

Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this Act, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws, and with the Secretary of Commerce if under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, or the Secretary of Commerce, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. In order to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any customs agent, collector, judge of the United States Customs Court, or United States commissioner, to take testimony upon such petition: *Provided*, That nothing in this section shall be construed to deprive any person of an award of compensation made before the filing of such petition.

On July 31, 1936, the Secretary of the Treasury, acting through one Wayne C. Taylor, as Acting Secretary of the Treasury, refused to determine whether or not said failure to mark the said merchandise in such manner as to indicate the country of origin thereof was under such mitigating circumstances as would permit him to comply with the petitioner's request. The petition to the Secretary was grounded upon alleged rights granted by section 618 authorizing the Secretary, under certain circumstances, to remit certain forfeitures and penalties, and the petitioner alleged that the collector's levying of the additional duty was in the nature of a penalty and not, in fact, a duty. The appellant's petition was denied by the Secretary of the Treasury upon the ground that the said 10 per centum additional duty was a duty and not a penalty and that he was without jurisdiction to consider the petition.

Thereafter, the Collector of Customs levied and assessed the amount of 10 per centum of the value of said silk by virtue of the provision of section 304 (b) and applied against said liquidation the amount necessary to meet such assessment.

Cotonificio Bustese, through proper agents, filed protests against said action of the collector, claiming, in substance, that the denial by the Secretary of the Treasury of the remedy alleged to be accorded to the petitioner by section 618 "was unauthorized by, contrary to, and in violation of said section 618, and that the collector's liquidation and decision, including, based upon, involving or following said illegal and void order and finding of the Secretary of the Treasury, is itself illegal and void." It was also claimed that any such liquidation of the collector after the petition for the remission or mitigation thereof had been filed with the Secretary of the Treasury was without legal authority unless the Secretary rendered a valid decision upon said petition. The theory of the protests is, in substance, that until the Secretary acted and exercised his discretionary powers in passing upon the issue presented by the petition, any liquidation of the entry was without authority.

The United States Customs Court, on March 6, 1939, rendered its decision and judgment overruling the protests. Appeal thereafter was duly taken to this court from the judgment of the trial court.

On September 29, 1939, while said appeal was pending in this court, the appellant Cotonificio Bustese filed a bill with the District Court of the United States for the District of Columbia, praying for judgment directing the Secretary of the Treasury to consider and decide upon the merits the petition therebefore filed with him. The said District Court dismissed the bill, and on appeal to the United States Court of Appeals for the District of Columbia, the District Court's decision was reversed. *Cotonificio Bustese, S. A.* v. *Morgenthau,* 74 App. D. C. 13, 121 F. (2d) 884. No application was filed for a writ of certiorari to obtain a review of the Court of Appeal's decision by the Supreme Court of the United States. The judgment of the Court of Appeals reversed that of the District Court, and the case was remanded for further proceedings not inconsistent with the appellate court's opinion.

No mandate issued from the District Court to the Secretary of the Treasury. The cause was set down for further proceedings in the District Court, and while so pending, the Secretary of the Treasury, through his delegated agents, reconsidered the appellant Bustese's petition upon its merits, rendered a decision mitigating the said alleged penalty of $69,106.80 to the sum of $1,000, and directed the Collector of Customs at New York to remit and refund $68,106.80. That sum was paid to the appellant Frederic Henjes, Jr., Inc., and now, less attorneys' fees, is deposited in the National City Bank of New York to the credit of the appellant Bustese as a national of Italy and is there "frozen" in accordance with Executive Order No. 8389, of April 10, 1940, as amended, and the regulations and rulings issued thereunder.

Appellants' motion to reverse and remand with instructions to dismiss the protests is based upon the allegation that the controversy raised by the protests and the decision below and the appeal therefrom "has become moot or has ceased to present a proper subject for judicial action." The Assistant Attorney General in charge of customs jurisdiction appears in this court and objects to the reversal of the judgment of the trial court. He does not object to the dismissal of the appeal but assigns no reason for taking the latter position.

The decisions of the courts, as far as we have observed, are uniform to the effect that in instances where litigation is based upon a money demand or the doing of a particular thing and during the pendency of such litigation in the trial or appellate courts the money has been paid and full compliance has been made with the demands in the litigation, the issue then becomes moot not only in the appellate court but in the lower tribunal where the issue first arose. *San Mateo County* v. *Southern Pac. R. R. Co.*, 116 U. S. 138; *Little* v. *Bowers*, 134 U. S. 547; *Singer Manufacturing Co.* v. *Wright*, 141 U. S. 696; *California* v. *San Pablo & Tulare R. R. Co.*, 149 U. S. 308.

Another principle of law correctly stated by appellants is that when an issue has become moot in an appellate court, the court will not dismiss the case but will reverse and remand the judgment below with instructions to take such further steps as the justice of the situation requires. *New Orleans Flour Inspectors* v. *Glover*, 161 U. S. 101; *United States* v. *Hamburg-American Co.*, 239 U. S. 466; *Berry* v. *Davis*, 242 U. S. 468; *Commercial Cable Co.* v. *Burleson*, 250 U. S. 360; *Brownlow* v. *Schwartz*, 261 U. S. 216; *City of Centralia, Ill.*, v. *Illinois Power & Light Corp.*, 89 F. (2d) 985.

It is unnecessary to discuss the long list of cases which announce the last above-stated principle of law, for the reason that all of the later decisions of all the courts, involving facts similar to those at bar, uniformly support said principle. The rule at one time followed by the Supreme Court of the United States was to dismiss the appeal if the issue became moot. In some of the cases cited the Supreme Court acknowledged its error in so doing, and it now follows what it states is the better practice of reversing the judgment below and remanding the case for further proceedings. See particularly *New Orleans Flour Inspectors* v. *Glover, supra*.

Now, in the instant case the appellants have their money which they claimed was illegally exacted from them by the government. The government has fully settled the claim. As far as we know, no useful purpose would be served by continuing the litigation. In fact, the Assistant Attorney General states that he has no objection to the dismissal of the appeal, but no showing has been made here that any decision on our part adverse to the appellants would result in the government's repossessing itself of the money paid out, and no one

has suggested that any steps taken to recover the same are in contemplation, nor does the government in any way disavow the settlement made. Courts do not lend themselves to deciding academic questions after the controversy between the parties involving the questions has been fully settled outside of court, and stipulation between the interested parties has been entered into for the dismissal of the bill pending before the District Court of the United States for the District of Columbia.

The government here urges that additional duties levied for the failure to mark imported goods under the section of law here in controversy are duties and not penalties and points to the following decisions of this court, which either directly or by necessary implication sustain its contention: *Bradford Co. et al.* (*United States impleaded*) v. *American Lithographic Co.*, 12 Ct. Cust. Appls. 318, T. D. 40318; *Kee Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *Lewis & Conger et al.* v. *United States*, 13 Ct. Cust. Appls. 22, T. D. 40862; *Sesquicentennial Exhibition Association* v. *United States*, 19 C. C. P. A. (Customs) 288, T. D. 45466. It urges that the last-cited decisions by this court are correct statements of law and that the decision appealed from in the instant case, which followed those decisions, is not erroneous.

Because of the fact that the issue has become moot, we are not privileged to discuss or to decide the question. Whatever conclusion arrived at, if we did pass upon the question, would be a futility.

By reason of the conclusion heretofore arrived at that the issue presented in the instant appeal has become moot, we should and do hold that the judgment below must be, and it is hereby, *reversed*, and the cause is *remanded* to the trial court with instructions to dismiss the protests.