BRADFORD CO. ET AL. (UNITED STATES IMPLEADED) v. AMERICAN LITHOGRAPHIC CO., AN AMERICAN MANUFACTURER. (No. 2386).[1]

1. CONSTRUCTION SECTION 304 (a), TARIFF ACT OF 1922—"ARTICLE."
   Cigar bands were imported in packages of 100 each, the retaining band or wrapper of the package being marked "Made in Germany," but the individual cigar bands not being marked. The "article" which is required to be marked so as to indicate the country of origin by section 304 (a), tariff act o[f] 1922, is the cigar band itself, and the merchandise was not legally marked.

2. CONSTRUCTION, SECTION 516 (b), TARIFF ACT OF 1922—"CLASSIFICATION."
   The action of the collector in determining whether or not merchandise is lawfully marked in accordance with section 304 (a), tariff act of 1922, is a classification within the meaning of section 516 (b) permitting American manufacturers to protest, and this is in no way affected by the alternative given by Section 304 (a) to pay the additional duty or export the merchandise.

United States Court of Customs Appeals, June 28, 1924

APPEAL from Board of United States General Appraisers, G. A. 8767 (T. D. 40094)

[Affirmed.]

*Brodek & Raphael* (*Charles A. Brodek* and *Arthur Ofner* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*Marcus Higginbotham, jr.,* special attorney, of counsel), for the United States.
*Percival D. Oviatt* and *Walter Gordon Merritt* for appellee.

[Oral argument May 20, 1924, by Mr. Brodek, Mr. Hoppin, and Mr. Oviatt]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers sustaining the protests of the American Lithographic

---

[1] T. D. 40818.

Co., an American manufacturer, to the collector's classification and assessment of imported cigar labels and bands.

It is alleged in the protests that the American Lithographic Co.. is an American manufacturer, producer, and wholesaler of cigar labels and bands; that the imported merchandise was not marked, stamped, branded, or labeled, so as to indicate the country of origin as required by section 304 (a) of the tariff act of 1922, and that it. was capable of being so marked, stamped, branded, or labeled; that it was delivered to the importer without being marked, stamped, branded, or labeled and without the levy, collection and payment of the duty provided for in section 304 (a) of the act of 1922, which reads. as follows:

SEC. 304. (a) That every article imported into the United States, which is. capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked,. stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped,. branded, or labeled, shall be marked, stamped, branded, or labeled in accord-- ance with such rules and regulations as the Secretary of the Treasury may pre- scribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article or articles shall be marked,. stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be- delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regula-- tions to carry out the foregoing provisions.

The authority for the filing of protests to the collector's classifica- tion and assessment of imported merchandise by an American manufacturer, producer, or wholesaler is granted by the provisions. of section 516 (b) of the tariff act of 1922, which reads as follows:

SEC. 516. (b) The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of and the rate of duty, if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is

not being assessed, he may file a complaint with the Secretary of the Treasury setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief.  If the Secretary believes that the classification of or rate of duty assessed upon the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform such manufacturer, producer, or wholesaler, and such rate of duty shall be assessed upon all merchandise imported or withdrawn from warehouse after thirty days after the date of such notice to the collectors.  If the Secretary believes that the classification and rate are correct, he shall so inform such manufacturer, producer, or wholesaler.  If dissatisfied with the action of the Secretary, such manufacturer, producer, or wholesaler may file with him a notice that he desires to protest the classification or the rate of duty imposed upon the merchandise, and upon receipt of such notice the Secretary shall furnish him with such information as to the entry, the consignee, and the port of entry as will enable him to protest the classification of or the rate of duty imposed upon the merchandise when liquidated at any port of entry. Upon written request therefor by such manufacturer, producer, or wholesaler, the collector of such port of entry shall notify him immediately of the date of liquidation.  Such manufacturer, producer, or wholesaler may file, within sixty days after date of liquidation, with the collector of such port, a protest in writing setting forth a description of the merchandise and the classification and the rate of duty he believes proper, with the same effect as a protest of a consignee filed under the provisions of section 514 and 515 of this act.

The collector assessed the merchandise for duty under paragraph 1106, of the tariff act of 1922, at the appropriate rate provided therein for such merchandise; he determined that it was legally marked, and that the provisions of section 304 (a), supra, pertaining to imported merchandise not legally marked, did not apply to the importation under consideration, and liquidated the entries accordingly.

The appraiser's reports to the collector in protests 994334/32554 and 994335/32556 are in identical language, and read as follows:

All of the bands and labels covered by the within invoice were packed in bundles of 100 pcs.  Each bundle was enclosed in a paper band having words "made in Germany" stamped thereon.  Individual labels and bands were not marked.  Marking the bundles as described above has been considered legal marking by this office, following department letter dated March 28, 1923 (275/530/110600/9).

The Board of General Appraisers in sustaining the protests held that the individual cigar bands and labels were capable of being marked at a negligible cost, without injury, at the time of manufacture, so as to indicate the country of origin; and that section 304 (a), supra, required such marking of the individual cigar bands and labels.

The Board of General Appraisers also held that the determination by the collector that the merchandise was, or was not, lawfully marked, as required by section 304 (a), supra, involved classification of the merchandise, and that the additional duty of 10 per cent of the appraised value of merchandise classified as not legally

marked, provided for in section 304 (a), is a rate of duty within the meaning of the provisions of section 516 (b) of the act of 1922, granting to an American manufacturer, producer, or wholesaler, of the class or kind of the imported merchandise, the right to protest the classification of merchandise and the rate of duty assessed by the collector; and that the right granted to the importer of merchandise not lawfully marked to export the same under customs supervision, and thus avoid the additional duty provided for in section 304 (a), supra, does not make the provisions of section 516 (b), supra, inoperative where, as in the case under consideration, the merchandise was not exported, and, in the opinion of the American manufacturer, producer, or wholesaler, an improper classification has been made and a wrong rate of duty assessed.

It is contended by the appellants that section 516 (b), permits a third party to initiate an original proceeding, to determine rights and obligations as between the Government and the importers and should be strictly construed; that if any doubt exists in the interpretation of such section, as to the legislative intent, such doubt should be resolved in favor of the importers, as duties are never imposed upon doubtful interpretations.

It is contended that section 516 (b), does not extend to the protestant the right to raise the question of the legality of an importation, nor the legality of a delivery of merchandise from customs custody.

It is argued that the provisions of section 304 (a), supra, do not involve classification of merchandise, and an assessment of a rate of duty and therefore the right extended to an American manufacturer, producer, or wholesaler, by section 516 (b), supra, to protest the classification of merchandise and the rate of duty assessed by the collector, does not apply to the questions involved in this case and accordingly the Board of General Appraisers was without jurisdiction to determine the issues presented by the protest of the American manufacturer; that a reasonable interpretation of section 304 (a), supra, shows that it can not be brought within the purview of section 516 (b), supra, for the reason that the levy and collection of the additional duty depends upon the failure of the importer to exercise the right granted him to export such unlawfully marked merchandise; that the merchandise involved in this case was legally marked and the action of the collector was legal and valid.

It appears that the articles contained in the importation were imported in bundles or packages of 100 each, and around each bundle or package was a paper band with the words "made in Germany," printed upon it, to indicate the country of origin. The individual bands were not marked in any manner to indicate the country of origin.

Section 304 (a), supra, provides, that every article imported into the United States, which is capable of being marked, without injury, at the time of its manufacture, shall be marked, so as to indicate the country of origin, in a conspicuous place that shall not be obscured by any subsequent attachment, and such marking shall be as permanent as the nature of the article will permit.

An article is defined by the lexicographers as something considered by itself, a particular object or substance; a material thing of a particular class or kind; and this definition has been accepted by Congress in tariff legislation and applied by the Supreme Court in the construction of tariff statutes.—Junge v. Hedden (146 U. S. 233).

The imported article under consideration, it seems to us, is not the bundle or package of cigar bands, it is the cigar band itself, manufactured for a definite purpose and use and imported in packages containing several individual articles, or bands. They are undoubtedly put up in packages for convenience in handling. The character of the individual article has not been changed by putting it up in packages containing 100 similar articles, and importing it in that condition. The cigar band is the manufactured article and it is the article of importation. If it is proper to make the classification of an article depend upon the manner in which it is imported, or the package in which it is contained, evasion of the tariff laws would be simple indeed.

The article itself, if capable of being marked without injury at the time of its manufacture, is required to be marked in as permanent a manner as the nature of the article will permit. While the package in which it is contained is required to be marked the element of permanence required in the character of marking of the article itself is not required in marking the package in which the article is contained.

We think that the language of section 304 (a), supra, is a plain, concise, and unambiguous expression of the legislative intent, and requires no judicial construction. In unequivocal language it requires that every article imported into the United States, which is capable of being marked, without injury, at the time of its manufacture, shall be marked in a permanent manner, so as to indicate the country of origin.

It has been fully established, we think, that the merchandise involved in this case was capable of being marked, without injury to it, at the time of its manufacture, so as to indicate the country of origin, and, that it was not so marked when imported into the United States; and not having been exported as provided by section 304 (a), supra, and in this case, that question having been definitely determined by its admission into the commerce of the United States, it

was subject to the additional duty of 10 per cent of its appraised value provided for such merchandise.

But it is contended by the appellants, that even though the article was not lawfully marked, the determination by the collector as to the character of the merchandise in this regard does not amount to classification of the merchandise.

Classification of imported merchandise is the process or act of grouping, or arranging merchandise into classes; it is a process which may be based upon the use to which the article has been dedicated, its commercial designation, its similarity to other merchandise, the condition in which it is imported, and other equally important considerations, the purpose of which is to determine what provisions of the tariff laws are applicable thereto.

Section 304 (a), supra, requires that every article imported into the United States, which is capable of being marked, without injury, at the time of its manufacture, shall be marked in as permanent a manner as the nature of the article will permit, in a conspicuous place that shall not be obscured by any subsequent attachment or arrangement.

An article may be legally marked, or illegally marked, or it may not be marked at all, if the nature of the article will not permit.

It must be determined as to what group or class it belongs. Whether it is lawfully marked or unlawfully marked requires investigation, examination, and intelligent consideration and determination; the resultant is classification of the merchandise, to the extent at least, of the requirements of section 304 (a), supra.

The levy and collection of the additional duty of 10 per cent of the appraised value of the merchandise, is dependent upon the classification of the merchandise, as to its character and the class to which it properly belongs, and the exercise of the right granted by section 304 (a), supra, to the importer to export the merchandise under customs supervision.

The fact that the merchandise may be exported, and the importer thereby relieved of the payment of the duty, does not affect or change the character of the duty, provided by the section under consideration. It is a rate of duty to be levied upon such merchandise as is classified by the collector as not marked in conformity with the mandate of the law.

The word rate is defined in the Century Dictionary to mean:

Charge or a valuation according to a scale or standard; comparative price or amount of demands.

We think that a proper interpretation of the phrase, "rate of duty," as it is used in section 516 (b), supra, means the amount of duty assessed against imported merchandise, resulting in the first instance, from the classification thereof. No other fair conclusion can be

reached, we think, without a strained interpretation of the provisions of the section, expressive of the legislative intent as it plainly appears therein, that is, to extend to the American manufacturer, producer, or wholesaler the right to protest a classification of imported merchandise of a class and kind manufactured, produced, or sold at wholesale by him, and the rate of duty assessed thereon, if in his opinion such classification is wrong and the rate of duty assessed improper, because of his interest and concern in preventing unlawful competition in the markets of the United States by foreign producers of foreign products, resulting in injury to his business. Congress could have had no other purpose in view, and to defeat that purpose by a strained construction of the statute is not a proper judicial function.

We conclude, therefore, that the protests in this case properly invoked the jurisdiction of the Board of General Appraisers.

The judgment of the Board of General Appraisers is *affirmed.*

BARBER, Judge, dissents.