**HAMMOND LEAD PRODUCTS, INC.**

v.

**UNITED STATES (Ralph Valls, Party-in-Interest).**

**C. D. 3552; Protest No. 67/77548.**

United States Customs Court, First Division.

Sept. 11, 1968.

Alvord & Alvord, Washington, D. C. (Albert H. Greene, Washington, D. C., of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Brian S. Goldstein, New York City, trial attorney), for defendant.

Chapman, DiSalle & Friedman, Washington, D. C. (Paul A. Lenzini, Washington, D. C., of counsel) for party-in-interest.

Before WATSON and MALETZ, Judges.

MALETZ, Judge:

This is a protest by an American manufacturer under section 516(b) of the Tariff Act of 1930, as amended (19 U.S.C. § 1516(b)). The protest challenges the finding of the Secretary of the Treasury that no bounty or grant, as defined in section 303 of the Tariff Act of 1930 (19 U.S.C. § 1303), had been paid or bestowed by the Mexican Government upon certain litharge[1] that was

---

1. Litharge is a lead oxide which is used primarily in the battery industry.

manufactured in Mexico and imported into the United States. See T.D. 67–142 (1967). The litharge was classified by the collector under item 473.52 of the Tariff Schedules of the United States at 1.25 cents per pound,[2] and this classification is undisputed. However, plaintiff claims in its protest that contrary to the finding of the Secretary, the Mexican Government does in fact bestow a bounty or grant upon the exportation of the litharge to the United States (allegedly in the estimated amount of three cents per pound) and that, consequently, an additional countervailing duty equal to the net amount of such bounty or grant is required to be paid under the authority of section 303 of the Tariff Act of 1930. Defendant and the party-in-interest (the importer) have filed motions to dismiss on the ground that this court lacks jurisdiction to consider a protest filed by an American manufacturer under section 516(b) of the act seeking review of a finding by the Secretary of the Treasury that a foreign government did not pay or bestow a bounty or grant on exportations which would require the imposition of a countervailing duty as provided for in section 303 of the act. For the reasons set out below, we hold that the court has jurisdiction to review the Secretary's determination and therefore deny the motions to dismiss.

As to the statutes involved, section 516(b) of the Tariff Act of 1930, as amended, provides as follows:

(b) The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being as-

sessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all such merchandise entered for consumption or withdrawn from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions. If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such

---

**2.** Item 473.52 of the Tariff Schedules provides:

Pigments (except pigments, in dry form, described in the foregoing provisions of this subpart):

   *     *     *     *     *

Containing lead:

   *     *     *     *     *

Item 473.52 Litharge .... 1.25¢ per lb.

complainant immediately when the first of such entries is liquidated. Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. Notwithstanding such protest is filed, merchandise of the character covered by the published decision of the Secretary, when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, rendered under the provisions of subsection (c) of this section, not in harmony with the published decision of the Secretary, shall be classified and the entries liquidated in accordance with such decision of the Secretary, and, except as otherwise provided in this chapter, the liquidations of such entries shall be final and conclusive upon all parties. If the protest of the complainant is sustained in whole or in part by a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, merchandise of the character covered by the published decision of the Secretary, which is entered for consumption or withdrawn from warehouse for consumption after the date of publication of such court decision, shall be subject to classification and assessment of duty in accordance with the final judicial decision on the complainant's protest, and the liquidation of entries covering such merchandise so entered or withdrawn shall be suspended until final disposition is made of such protest, whereupon such entries shall be liquidated, or if necessary, reliquidated in accordance with such final decision.

Section 303 of the Tariff Act of 1930 reads:

Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this chapter, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this chapter, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

■ We start with several introductory considerations. First, it is now settled that section 516(b) permits American manufacturers to protest only the *classification* of imported merchandise and the *rate of duty* assessed thereon; that section—unlike section 514 which is applicable to importers' protests[3]—does

3. Section 514 of the Tariff Act of 1930, as amended, specifically provides that an

importer may protest not only as to the rate, but also as to the amount, of du-

not authorize the American manufacturer to protest against the *amount of duty* assessed. E. C. Miller Cedar Lumber Co. v. United States, 24 CCPA 272, 279–280, T.D. 48701 (1936). Thus the court pointed out in E. C. Miller (24 CCPA at 280:

> * * * [T]he Congress did not extend to the American manufacturer the right to protest against the *amount of duty* assessed against imported merchandise, but limited its right of protest to the classification thereof, and the rate or rates of duty assessed thereon. It did not authorize the American manufacturer to protest against the collector's decision as to the weights, measures, and quantities of imported merchandise, nor to challenge the correctness of the collector's orders and findings, unless the proper classification of such merchandise, or the assessment of the proper rate or rates of duty thereon, depended upon such weights, measures, quantities, and orders and findings of the collector. No doubt, the Congress assumed that, unless the classification of imported merchandise, and the rate or rates of duty to be assessed thereon, depended upon the orders and findings entering into the collector's decision, such orders and findings might safely be left to the customs officials, giving the importers only the right to challenge their correctness.

> Desiring, however, to give American manufacturers the right to aid in the interpretation and construction of the law, and to give them full protection thereunder, the Congress did provide that such manufacturers might protest against the classification of imported merchandise, and the rate or rates of duty assessed thereon by the collector. [Emphasis quoted.]

The second consideration is that where a classification or rate of duty question is involved, an American manufacturer has the privilege under section 516(b) of contesting the legality of any order or finding "to the same extent, so far as judicial review is concerned, as an importer might do under the provisions of section 514, providing for protests by importers against decisions of the collector." Feltex Corp. v. Dutchess Hat Works, 71 F.2d 322, 327, 21 CCPA 463, 472, T.D. 46957 (1934). See also H.Rept. No. 7, 71st Cong. 1st Sess. (1929), pp. 179–180. Lastly, it is established that this court has jurisdiction, upon a section 514 protest by an importer, to review the Secretary's finding under section 303 as to whether a foreign government pays a bounty or grant on exportations to the United States. Downs v. United States, 113 F. 144, 146 (4th Cir., 1902), aff'd 187 U.S. 496, 23 S.Ct. 222, 47 L.Ed. 275 (1903). See also e. g. United States v. Hills Bros. Co., 107 F. 107 (2d Cir., 1901); Nicholas & Co. v. United States, 7 Ct.Cust.Appls. 97, T.D. 36426 (1916); F. W. Woolworth Co. v. United States, 115 F.2d 348, 28 CCPA 239, C.A.D. 151 (1940); V. Mueller & Co. v. United States, 115 F.2d 354, 28 CCPA 249, 257, C.A.D. 152 (1940); Energetic Worsted Corp. v. United States, 53 CCPA 36, C.A.D. 874 (1966); Bullocks, Inc. v. United States, 6 Cust.Ct. 110, C.D. 441 (1941).[4]

The problem against this background is to determine whether this court has similar jurisdiction to review the Secretary's finding as to the applicability of section 303—where the issue comes up through protest by an American manufacturer under section 516(b). From what has been said, the answer obviously depends on whether the Secretary's finding—in this case, that the litharge is not

---

ties assessed against his merchandise, and further gives him the right to contest the legality of all orders and findings entering into the fixing of such rate and amount of duties.

4. Where the Secretary determines that a bounty or grant has been bestowed, several cases indicate that his finding as to its amount is final and conclusive and not reviewable by the courts. E. g. Downs v. United States, supra, 113 F. at 146; V. Mueller & Co. v. United States, supra, 115 F.2d 354, 28 CCPA at 258.

within the confines of section 303 so that additional duty is therefore not required —involves a classification or rate of duty question on the one hand, or an amount of duty question, on the other. As we have seen, should the Secretary's finding involve classification or rate of duty (as plaintiff argues), it is judicially reviewable by this court on an American manufacturer's protest under section 516(b); but should his finding involve amount of duty (as defendant and the party-in-interest maintain), judicial review is foreclosed.[5]

Bearing directly on this problem is Bradford Co. and U. S. v. American Lithographic Co., 12 Ct.Cust.Appls. 318, T.D. 40318 (1924). In *Bradford*, an American manufacturer through section 516(b) of the Tariff Act of 1922,[6] protested the failure of the Secretary of the Treasury to impose an additional duty equal to 10 percent of the appraised value of the article, because such merchandise was not marked, stamped, branded or labeled, so as to indicate the country of origin as required by section 304(a) of the Tariff Act of 1922—the predecessor to section 304 of the Tariff Act of 1930. The appeals court affirmed the holding of the Board of General Appraisers that "the determination by the collector that the merchandise was, or was not, lawfully marked, as required by section 304(a), supra, involved classification of the merchandise, and that the additional duty of 10 per cent of the appraised value of merchandise classified as not legally marked, provided for in section 304(a), is a rate of duty within the meaning of the provisions of section 516(b) of the act of 1922, granting to an American manufacturer, producer, or wholesaler, of the class or kind of the imported merchandise, the right to protest the classification of merchandise and the rate of duty assessed by the collector; * * * *" 12 Ct.Cust.Appls. at 320–321.

In *Bradford*, the appellant contended that the provisions of section 304(a) do not involve classification of merchandise and an assessment of a rate of duty, and therefore the right extended an American manufacturer by section 516(b) did not apply and, accordingly, the Board of General Appraisers was without jurisdiction.[7] The appellate

5. Section 516(b) is the only vehicle by which an American manufacturer may obtain judicial review of a customs decision by the government involving a rate of duty (or classification) question. For the appeals court has held that section 514 of the Tariff Act of 1930 does not permit an importer to protest a rate of duty as being too low and thus that an American manufacturer may not, by importing goods, challenge the correctness of a lower rate than that which is claimed to be proper. Fletcher v. United States, 92 F.2d 713, 25 CCPA 195, T.D. 49294 (1937). The authorization in section 516(b) for American manufacturers to protest against the classification and/or rate of duty assessed against imported merchandise was the progeny of the Tariff Act of 1922. See e. g. H.Rept. No. 248, 67th Cong. 1st Sess. (1921), p. 26. The tariff acts prior to the Tariff Act of 1913—e. g. the Tariff Act of 1909—were judicially construed as permitting an importer to contest by protest a rate of duty as being too low—which meant that an American manufacturer could obtain relief simply by importing the merchandise in question, and then protesting that the rate of duty was too low. United States v. Schwartz & Co., 3 Ct. Cust.Appls. 24 T.D. 32315 (1912). The *Schwartz* "decision did not meet with favor" and the right to protest a rate of duty as being too low was abrogated by the Tariff Act of 1913 which limited the protest to a rate of duty which was claimed to be too high. State of Louisiana v. McAdoo, 234 U.S. 627, 632, 34 S.Ct. 938, 58 L.Ed. 1506 (1914).

6. So far as the present issue is concerned, section 516(b) of the Tariff Act of 1922 was essentially similar to section 516(b) of the Tariff Act of 1930.

7. More specifically, the appellant contended that the "additional duty" imposed by section 304(a) was a penalty and therefore not within the scope of section 516(b); and that the word "duty" in the phrase "rate of duty" in section 516(b) should not be construed to mean "additional duty." Brief, pp. 9–18. The appellant further argued that the case

court responded to this argument by holding (12 Ct.Cust.Appls. at 323) that:

Classification of imported merchandise is the process or act of grouping, or arranging merchandise into classes; it is a process which may be based upon the use to which the article has been dedicated, its commercial designation, its similarity to other merchandise, the condition in which it is imported, and other equally important considerations, the purpose of which is to determine what provisions of the tariff laws are applicable thereto.

\* \* \* \* \* \*

It must be determined as to what group or class it belongs. Whether it is lawfully marked or unlawfully marked requires investigation, examination, and intelligent consideration and determination; the resultant is classification of the merchandise,
\* \* \*[8]

In regard to the provision of section 304 (a) which levies an additional duty of 10 percent of the appraised value, the court commented that "It is a rate of duty to be levied upon such merchandise as is classified by the collector as not marked in conformity with the mandate of the law. \* \* \* We think that a proper interpretation of the phrase, 'rate of duty,' as it it used in section 516(b), supra, means the amount of duty assessed against imported merchandise, resulting in the first instance, from the classification thereof." 12 Ct.Cust. Appls. at 323.

\* \* \* No other fair conclusion [the court added] can be reached, we think, without a strained interpretation of the provisions of the section, expressive of the legislative intent as it plainly appears therein, that is, to extend to the American manufacturer, producer, or wholesaler the right to protest a classification of imported merchandise of a class and kind manufactured, produced, or sold at wholesale by him, and the rate of duty assessed thereon, if in his opinion such classification is wrong and the rate of duty assessed improper, because of his interest and concern in preventing unlawful competition in the markets of the United States by foreign producers of foreign products, resulting in injury to his business. Congress could have had no other purpose in view, and to defeat that purpose by a strained construction of the statute is not a proper judicial function. [12 Ct.Cust.Appls. at 323–324.]

*Bradford,* we conclude, is determinative of the jurisdictional issue here. Section 303, like section 304, requires the imposition of an added duty, added upon the existing statutory duty, should a specific condition exist. In section 304, this condition is the failure to properly mark the imported goods with the country of origin; in section 303 this condition includes the bestowal of a bounty or grant by a foreign government. One teaching of *Bradford* is that the determination by the Secretary of

did not involve "classification" on the asserted grounds (i) that classification does not depend on the state of the article, but rather depends upon the method of production and the nature of the product and is controlled by the schedules in the Dutiable List, and (ii) that it is the inherent nature of the merchandise and not any extraneous incident that must be determined in reaching the correct classification. Brief, pp. 18–24. Finally appellant contended that the term "rate of duty" means the rate of customs tax payable on imported merchandise under the schedules of Title 1 (the Dutiable List) and is not applicable to a fixed ten percent "additional

duty" for failure to mark. Brief, pp. 24–27.

8. Defendant insists that the issue in the present case does not involve a "classification" question since the Secretary's finding here—unlike the situation in *Bradford*—is in no way dependent upon the physical condition of the merchandise at the time of importation. But as the above quotation from *Bradford* makes crystal clear, it is scarcely a prerequisite to constitute "classification" that there be involved the physical condition of merchandise at the time of importation.

the existence of such a condition is "classification" within the meaning of section 516(b).

It is quite true that in *Bradford* section 304(a) of the Tariff Act of 1922 imposed an additional duty "of 10 per centum of the appraised value thereof," while here section 303 of the Tariff Act calls for an additional duty "equal to the net amount of such bounty or grant." But the fact that the latter amount must be administratively translated into numerical terms is not a viable distinction. For "[t]he finding of that amount is a ministerial or administrative duty which the statute, for obvious reasons, imposes upon the Secretary of the Treasury. After he makes such finding and advises collectors thereof, the latter automatically assess the amount as a countervailing duty, just as they assess regular duties in conformity with the rates fixed by statute." V. Mueller & Co., supra, 115 F.2d at 361, 28 CCPA at 258. In short, just as the additional duty of 10 percent of the appraised value of merchandise classified as not legally marked, as required by section 304(a), is a "rate of duty" within the meaning of section 516(b), so an additional duty equal to the net amount of a bounty or grant, as required by section 303, is a "rate of duty" within the meaning of section 516(b).[9] Thus, the "rate of duty" within the meaning of section 516(b) is not delimited to the statutory duty being assessed on the imported merchandise; rather, the imposition of an additional duty under section 303 is as much a statutory duty as the 1.25 cents per pound contained in Item 473.52 of the Tariff Schedules. This is to say that if the existence of a bounty or grant is shown, then the mandate to levy the appropriate countervailing duty possesses the same statutory sanctity as the requirement of imposing 1.25 cents per pound under Item 473.52.

Another analogous decision is North American Cement Corp. v. Anderson, 109 U.S.App.D.C. 162, 284 F.2d 591 (1960). In that case, American cement manufacturers asked the Secretary of the Treasury to investigate whether cement imported from Norway was being sold in this country at less than its fair value. The Secretary found that the cement was not being sold at less than its fair value and, therefore, no dumping duty was imposed on importations of the merchandise as required by the Antidumping Act of 1921. Appellants then sought declaratory and injunctive relief against the Secretary of the Treasury and the Commissioner of Customs. The appellate court affirmed the district court's action dismissing the complaint for lack of jurisdiction on the ground that the American manufacturers had an adequate remedy in the Customs Court by filing a protest under section 516(b) of the Tariff Act of 1930, as amended, and that the case was therefore governed by 28 U.S.C. § 1340 which excepts from the jurisdiction of the district court "matters within the jurisdiction of the Customs Court." The basis of the holding in *North American Cement*, in other words, was that section 516(b) permitted an American manufacturer to protest the failure of the Secretary of the Treasury to find that cement imported from Norway was being sold in this country at less than its fair value, and the resulting failure to enforce a special dumping duty as required by the Antidumping Act.

In sum, we think it clear (i) that the determination of the existence of a bounty or grant, the purpose of which is to determine whether section 303 is applicable to the present importation is "classification" as defined in *Bradford;* and (ii) that an additional duty equal to the net amount of such bounty or grant is a duty to be assessed as a result of

9. It is also worthy of mention that when the Secretary of the Treasury determines that the amount of a countervailing duty is to be increased or decreased, the new amount is referred to in the customs regulations as the "new *rate*" "new *rates*." [Emphasis supplied.] See e. g. 19 CFR § 16.24(f), table (1968).

such classification, and is thus a "rate of duty" within the meaning of section 516(b). Moreover, considering that classification and rate of duty questions are thus involved, and that section 514 is the appropriate means for an *importer* to protest the imposition of a countervailing duty, an American manufacturer necessarily possesses the correlative right— under the principle set forth in *Feltex*— to protest via section 516(b) the lack of imposition of a countervailing duty. Feltex Corp. v. Dutchess Hat Works, supra, 71 F.2d 322, 21 CCPA at 472.

Defendant and the party-in-interest argue, however, (as did the appellant in *Bradford,* see note 7 supra) that the sole "rate of duty" for litharge is specified in item 473.52 of the Tariff Schedules (at the rate of 1.25 cents per pound), and that the additional duty sought by plaintiff pursuant to section 303 is not part of the rate of duty for litharge but an addition thereto. In these circumstances, they place major reliance on E. C. Miller Cedar Lumber Co. v. United States, supra, 24 CCPA 273 (1936) and contend that plaintiff's protest, though it purports to challenge the "rate of duty" at which litharge is to be assessed, merely complains of the total *amount of duty* assessed against the imported merchandise so that the court lacks jurisdiction. There is a twofold difficulty with this contention however. In the first place, the selfsame argument was (as previously discussed) expressly rejected by *Bradford.* Second, reliance on *E. C. Miller* is misplaced. In *E. C. Miller,* an American manufacturer filed a protest under section 516(b) claiming that the ascertainment of the quantity of lumber upon which duty should have been assessed was made upon a wrong basis of measurement. The merchandise involved was sawed lumber less than one inch thick, and the claim was that board feet meas-

ure should have been ascertained by measuring the merchandise as though it were one inch thick throughout and not by a formula laid down in various Treasury rulings. (The protest raised no question as to the classification or rate of duty assessed.) This court dismissed the protest for lack of jurisdiction on the basis that the only two grounds upon which an American manufacturer could protest were classification and rate of duty, and neither of those two actions were made an issue in the protest. E. C. Miller Cedar Lumber Co. v. United States, T.D. 48701 (1936). The appellate court affirmed the dismissal for lack of jurisdiction on the basis that an "amount of duty" question was the only question involved, and in so doing concluded that "rate of duty" within the meaning of section 516(b) was not equivalent to the total amount of duty assessed. E. C. Miller Cedar Lumber Co. v. United States, supra, 24 CCPA 273 (1936).[10] In determining what was meant by "amount of duty" as distinguished from "rate of duty," the court pointed out (as we have seen) that

> * * * It [516(b)] did not authorize the American manufacturer to protest against the collector's decision as to the weights, measures, and quantities of imported merchandise, nor to challenge the correctness of the collector's orders and findings, unless the proper classification of such merchandise, or the assessment of the proper rate or rates of duty thereon, depended upon such weights, measures, quantities, and orders and findings of the collector. [24 CCPA at 280.]

The court in *E. C. Miller* further clarified what was meant by "amount of duty" in the following terms:

> Of course, if the collector did use the wrong formulas in ascertaining "board

10. In the course of its opinion, the court in *E. C. Miller* dealt extensively with and cited with approval, its earlier decision in *Bradford* but made it clear that the latter case was not in point since it involved a classification-rate of duty question rather than an amount of duty problem. 24 CCPA at 279. It may be added that Judge Hatfield wrote the opinion for the appellate court in both *Bradford* and *E. C. Miller.*

measure," and used the rates of duty provided by statute on a less *quantum* of lumber than that contemplated by the statutes in question, it could be argued with some plausibility that the effect of his decision was to reduce the rates of duty provided therein. Such an argument could always be made where the collector assesses the correct rate of duty, but makes an error in determining the correct amount of imported merchandise and assesses duty on a less quantity than that imported. To illustrate: If, as a matter of fact, 100 bushels of wheat were imported into the United States, and duty thereon was $1 per bushel, and the collector concluded that there were but 90 bushels, and assessed that quantity at the statutory rate of $1 per bushel, he, in effect, reduced the rate of duty to 90 cents per bushel. [24 CCPA at 281.]

The dispute in *E. C. Miller* was thus centered on the quantum of lumber involved, and not on the rate of duty to be assessed, and hence is not in point here. For here, plaintiff's protest is lodged against (1) the claimed improper classification of litharge—i. e. that it is not within the provisions of section 303, and (2) against the rate of duty resulting from such a classification, a duty equal to the net amount of such bounty or grant. Plaintiff is not questioning the quantum of litharge and resulting amount of duty, as was the situation in *E. C. Miller,* nor the amount of bounty or grant. The existence of the bounty or grant, and not its amount, forms the essence of plaintiff's protest.

The following will clarify the matter further. In the typical case where import duties are imposed, the appropriate government official proceeds in three stages. Initially (after appraisal), he classifies the imported merchandise, and, thus, determines the applicable rates of duty imposed by statute. Secondly, he ascertains the quantum of merchandise being imported. Thirdly, he multiplies the rate of duty times the quantum of merchandise (also times the value where the duty is ad valorem), and the result-

ing product is the amount of duty to be collected. The court in *E. C. Miller* was making a distinction in reference to this three-stage process. It pointed out that a protest directed at the determination of the quantum of merchandise must necessarily effect the amount of duty ultimately to be paid. But such a protest is not directed at the first stage— determination of classification and resulting rate of duty—which forms the jurisdictional basis .for protests under section 516(b).

The issuance of a countervailing duty under section 303 involves the same three-stage process. Initially, the classification must be made, i. e., the payment or bestowal of a bounty or grant, and then the section dictates the statutory rate of duty to be imposed. This rate of duty is defined as "an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed." It is precisely this classification and rate of duty to which the protest is directed. The second and third stages—the quantum of merchandise and resulting amount of duty—are (as pointed out previously) not involved in the present protest. .

What this comes down to is that amount of duty refers to the total amount actually assessed on a single importation (which can be of no special interest to an American manufacturer), whereas classification and rate of duty refer to the standards of assessment of duty on all merchandise of the same class (which, of course, have the utmost significance to the American manufacturer).

The party-in-interest also relies on Mills & Gibb v. United States, 8 Ct.Cust. Appls. 31, T.D. 37164 (1917). In that case window curtains were entered at their invoice price, which valuation was advanced 20 percent by the local appraiser. On appeal for reappraisement the general appraiser found actual market value to be only 5 percent in excess of the invoice price and thus reduced the addition of the local appraiser. While the appeal for reappraisement was pend-

ing, other window curtains of the same character were entered by the same importer and in declaring the value of that merchandise upon entry, the importer added 20 percent to the invoice price, stating that this addition was made by them in order to meet the advances made by the local appraiser upon the former importations. The second importation was similarly appealed for reappraisement and was subsequently appraised at the invoice price plus 5 percent increase. Paragraph I of the Tariff Act of 1913 provided in part:

> * * * The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

■ The importer claimed that the second importations fell within the foregoing statutory exception and that duty should be assessed upon the invoice price

plus 5 percent, as determined by the final reappraisement, notwithstanding that entry had been made at the invoice price plus 20 percent. Application to the Secretary for exercise of his authority to assess the merchandise at less than the entered value was denied by him, however, on the ground that the importer's contentions had not been sustained on reappraisement. The collector accordingly assessed duty at the entered value of the second importations instead of its reappraised value and the importer protested. On appeal, the appellate court held that the action of the Secretary was not reviewable—the rationale being that paragraph N of section 3 of the Tariff Act of 1913 sanctioned protests by an importer only upon decisions of the collector, and in that case, the collector had made no decision, and, in fact, possessed no authority to make a decision. 8 Cust. Ct.Appls. at 38.[11] This rationale is entirely inapplicable to plaintiff's protest, since section 516(b) of the Tariff Act of 1930, does not limit the right of an American manufacturer to protest to only a decision of a collector. Section 516(b) sanctions protests whenever the American manufacturer is dissatisfied with the classification and rate of duty of designated merchandise, as determined by the Secretary of the Treasury.

■ The party-in-interest argues further that section 516(b) does not serve the function of bringing countervailing duty complaints to the attention of the Secretary of the Treasury—which argument seems to be based on the contention

11. It is interesting to note that Congress evidenced displeasure with this judicial interplay of Par. N of Section 3 and Par. I of Section 3, Tariff Act of 1913, which in effect denied the importer the right to protest the amount of duty to be assessed. Section 489, Tariff Act of 1922, entirely abrogated this limiting feature on the importer's right to protest, providing, in part, that:

> * * * Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined

in this Act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, *and the collector shall liquidate the entry in accordance with the final appraisement.* [Emphasis supplied.]

that section 516(b) is not consistent with the implementing regulations, 19 CFR § 16.24 (1968), promulgated by the Secretary under section 303. But jurisdiction over the present protest depends upon the Congressional remedy found in section 516(b), and not upon any regulations issued by the Secretary. Any language in the regulations contrary to or inconsistent with section 516(b) is, of course, meaningless as to the jurisdictional issue before the court. In actuality, however, there is no inconsistency in the procedure to be followed by the Secretary under section 516(b) where, after the complaint, he determines the classification or rate of duty upon the merchandise is not correct, and the procedure by which the Secretary issues a countervailing duty order under 19 CFR § 16.24(d) and (e). Under section 516 (b) the action of the Secretary is initiated by a decision on his part as to the validity of the protestant's claim in his complaint. In the case of countervailing duties, that decision is rendered in conformity with the procedure established in 19 CFR § 16.24. What this means is that in countervailing duty matters the procedure established in section 516(b) is initiated by the Secretary's decision rendered in conformity with 19 CFR § 16.24. Thus, the procedure outlined in 19 CFR § 16.24 is not inconsistent with, but rather is antecedent to, the procedure established in section 516(b).

■ Lastly, defendant asserts that an added reason for concluding that the court lacks jurisdiction is that since the Secretary has sole discretion to determine the *amount* of any bounty or grant, there is no judgment this court could enter in the event it determined that Mexico did in fact pay a bounty or grant. The assertion is without merit. Should the court determine that a bounty or grant was paid, then in accordance with the last sentence of section 516(b), it would direct the district director of customs to reliquidate the entry by adding an additional duty equal to the net amount of the bounty or grant, as found by the Secretary. "The finding of that amount" (as we have seen) "is a ministerial or administrative duty which the statute, for obvious reasons, imposes upon the Secretary of the Treasury. After he makes such finding and advises the * * * [district director] thereof, the latter automatically assess[es] the amount as a countervailing duty, just as * * * [he] assess[es] regular duties in conformity with the rates fixed by statute." V. Mueller & Co., supra, 115 F.2d at 361, 28 CCPA at 258.

The motions to dismiss for lack of jurisdiction are denied.